(50 App. Div. 453.)

### DONNELLY v. DONNELLY.

(Supreme Court, Appellate Division, Second Department. April 14, 1900.)

DIVORCE—ADULTERY OF WIFE—SETTING ASIDE FINDING—ERROR.

Where in divorce proceedings the evidence of the wife's adultery is conflicting, and the determination of the issue depends on the credit to be given certain witnesses who had acted as amateur detectives, the question is one wholly for the jury, and it is error to set aside a verdict in favor of the wife.

Goodrich, P. J., and Woodward, J., dissenting.

Appeal from trial term, Richmond county.

Action by Henry Grattan Donnelly against Blanche M. Donnelly for divorce. From an order setting aside a verdict for defendant, she appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, HATCH, WOODWARD, and HIRSCHBERG, JJ.

George M. Pinney, Jr., for appellant.
Edward S. Griffing, for respondent.

WILLARD BARTLETT, J. After reading and re-reading the testimony in this case, I find it impossible to agree with the conclusion of the learned trial judge that the verdict of the jury, which acquitted the defendant of the charge of adultery, was against the weight of evidence. That her guilt was a natural inference from the circumstances narrated by some of the witnesses must be conceded, but it seems to me that the statements of these witnesses might well be discredited by the jury, in view of their admitted character as amateur detectives. The whole tone and tenor of the fair and impartial charge in which the issues were submitted to the jury for their determination must be regarded as convincing evidence that the judge deemed the proof at that time capable of supporting a verdict either way. Had he then thought otherwise, it is hardly possible that some stronger indication of his views should not be discoverable in his reference to the facts than is disclosed by the language of the charge. I think he was clearly right in holding that the answers to the questions of fact depended upon the estimate to be formed of the truthfulness of the plaintiff's witnesses, and this matter was one wholly for the determination of the jury. In a case of this character, where an accused wife has been exonerated by a jury from a charge of adultery, we have not been referred to any previous instance in which the court has set aside the finding; and, though the power to do so doubtless exists, I do not think its exercise should be sanctioned upon this record, or except under circumstances which demonstrate that the verdict is the result of sym-

pathy, or of some other improper influence, or has been reached in flagrant disregard of clear and convincing proof furnished by the uncontradicted testimony of disinterested witnesses. To uphold the order under review would be virtually to convict the defendant of adultery by judicial decision, after a jury, upon conflicting evidence, had pronounced her innocent.

I think the order appealed from should be reversed.

HATCH and HIRSCHBERG, JJ., concur.

Order setting aside verdict reversed, with costs.

GOODRICH, P. J. (dissenting). I cannot agree with the prevailing opinion in this case, and am constrained to state my reasons at length. It was alleged in the complaint that the defendant had on various occasions committed adultery with one Rotheroe. The parties were married at Philadelphia, in 1877, and there is no issue of the marriage. The court submitted to the jury four questions as to acts of adultery on February 22, 24, and 25, and March 3, 1899, at the Pavilion Hotel, on Staten Island. The jury answered each question in the negative. The plaintiff moved to set aside the verdict on the ground that it was against the weight of evidence, and the court granted the motion. The order recited that it was made "without hearing counsel in behalf of the defendant in opposition thereto." From this order the defendant appeals.

In Lund v. Spencer, 42 App. Div. 543, 59 N. Y. Supp. 752, it was said by Adams, J., after reviewing the authorities, that the granting of a motion to set aside a verdict on the minutes is a matter which rests almost entirely in the discretion of the court, and that "when, in the exercise of its discretionary powers," the court had set aside a verdict as against the weight of evidence, "its determination ought not to be reversed by an appellate tribunal unless it is made to appear beyond all cavil that great injustice has been done to the defeated party." Bannon v. McGrane, 45 N. Y. Super. Ct. 517. He also referred to Young v. Stone, 77 Hun, 395, 28 N. Y. Supp. 881, where it was said that, while the discretionary power should be exercised with caution, it ought, perhaps, to be more often exercised by trial courts, for the proper protection of litigants. See, also, the opinion of Mr. Justice Cullen in Luhrs v. Railroad Co., 11 App. Div. 173, 42 N. Y. Supp. 606. The great difficulties under which an appellate court labors in passing upon an order of this character are clearly stated by Mr. Justice Rumsey in Suhrada v. Railroad Co., 14 App. Div. 361, 43 N. Y. Supp. 904, and need not be repeated here. But the present appeal has been so earnestly argued by the learned counsel for the defendant as to justify an examination of the salient parts of the testimony, chiefly for the purpose of deciding whether there was an unwise exercise of discretion in the case at bar. The evidence shows that the parties lived together without unpleasantness till June 14, 1897, when they separated by written agreement. This separation immediately followed an altercation between them at the St. George Hotel, Staten Island, where they had been living. The defendant testified that on the evening in question her husband

and Rotheroe had been drinking together (she being present), and that her husband was so much under the influence of liquor that when she went with him to their room she tried to put him to sleep on a lounge, and then undressed herself, put on her night dress and was about to retire, when her husband jumped at her; that she had only time to pick up a shawl, and that she ran downstairs to the door; that before she could open it her husband seized her by the hair, rushed her out on the porch, bent her over the rail and beat her; that she cried for help, when Rotheroe and the bartender and Mr. Tilley, the landlord, came to her assistance; that Rotheroe threw her husband on the floor, saying that he could not be allowed to strike a woman in his presence. There is no testimony of any witness for the defendant corroborating this statement. It is significant that Rotheroe was not called by her as a witness in regard to it. Moreover, Tilley, who had been a witness for the plaintiff, was not asked about it by either party, nor was the bartender produced. Of course, under our practice, the husband was not a competent witness. These circumstances are material only when taken in connection with what followed. It was proved or admitted at the trial that the parties lived at Mrs. Demmer's house, No. 4 Tompkins avenue, Staten Island, during the winter of 1897–98; that the defendant went there from the St. George Hotel; that Rotheroe also went there from the St. George two or three days afterwards; that they occupied adjacent rooms with a door between; that on May 25, 1898, the defendant and Rotheroe went to the Pavilion Hotel, where they respectively occupied adjacent rooms, Nos. 250 and 251; that they afterwards occupied Nos. 409 and 410, then Nos. 217 and 218, and then Nos. 313 and 314, each pair of rooms being adjacent, with a door between. At the time of the trial the defendant and Rotheroe were respectively occupying Nos. 109 and 110, with no connecting door, and it was proved that it was at the request of the defendant that they were given adjacent rooms each time. There was, however, evidence that the connecting doors were locked, and the keys in possession of the landlord. The plaintiff proved the service of a subpoena on Mrs. Demmer, to which she did not answer, having left her home. The evidence as to acts of adultery mainly relates to occurrences on February 22 and March 3, 1899, while the defendant and Rotheroe were respectively occupying rooms 313 and 314. As to the former date, Mann and his wife were chief witnesses. Mann, who was a friend of the plaintiff, was employed by him as a detective for the occasion, and, with Mrs. Mann, went to the Pavilion, in November, 1898, under the assumed name of Westbrook, and remained there for several months, during which they were more or less intimate with the defendant and Rotheroe. Mann and his wife testified that during the evening of February 22d they went out to the back of the hotel, opposite rooms 313 and 314. About 10 o'clock they saw the defendant in her room, undressing, down to her black undervest, her arms and shoulders being bare; and while this was going on they saw Rotheroe, partially undressed, enter the room. They testified that he and the defendant embraced and kissed. While seeing this, the witnesses' position was below the level of the window, the cur-

tain being half way up, so that they could not see the condition of the persons observed below the waist. Ellis, another friend of the plaintiff, who, on March 3d, about 11 o'clock, was also doing some amateur detective work, and standing with the plaintiff in the same place, testified that he saw the lights in the same rooms; that Rotheroe went into the defendant's room, partially undressed; that the defendant herself partially undressed, down to her undervest, while Rotheroe was in the room; that he saw them embrace and kiss, after which the light was put out, and he saw no more. The defendant absolutely denied all acts of adultery, and specifically contradicted the above testimony. But Rotheroe was not produced, though it appeared that he was still living at the Pavilion, in a room adjacent to that of the defendant, and his absence was not accounted for. There was also evidence introduced by the plaintiff tending to corroborate the proof of the defendant's guilt, as to which her friend Mrs. Brill and Rotheroe would have been material witnesses, but Mrs. Brill was not produced, and no reason was given for her absence. In addition to these facts, there was uncontradicted evidence as to the intimacy of the defendant and Rotheroe; that they took their meals together; that she sent out his washing, and paid for it; that on one occasion he was with her while she was shopping, and gave her money to pay for some slight purchase; that she had money, while her husband seems to have been impoverished. She did not testify that any of her money came from him, and, while she was not shown to have been in possession of any income, she had money with which to pay her bills. There was other evidence as to the drinking habits of the defendant, and her presence in low resorts, all of which she denied.

It is a most significant fact that Rotheroe was not called by the defendant as a witness, and strong inferences against her are to be drawn from such failure. It was held in Kenyon v. Kenyon, 88 Hun, 211, 34 N. Y. Supp. 720, that where, upon the trial of an action for absolute divorce, direct evidence is given of the adultery of the defendant, and this is denied by her testimony, but, although able to do so, she fails to call the person with whom it is charged that she committed the act, the failure to produce such exculpating testimony, while not conclusive as to the fact in dispute, creates a strong presumption against the defendant, and tends to strengthen the plaintiff's case. There was abundant evidence to justify the submission to the jury of the questions as to the defendant's adultery on the occasions mentioned. It is true that the evidence of detectives as to acts of adultery is not sufficient to support a verdict unless it is corroborated by other evidence, but where there is such testimony it is sufficient to prove the adultery where it is corroborated by proof of facts and circumstances harmonizing therewith, giving such weight and strength to the testimony as to induce belief in its truth. Moller v. Moller, 115 N. Y. 466, 22 N. E. 169. So it was held in McCarthy v. McCarthy, 143 N. Y. 235, 38 N. E. 288, that, while the uncorroborated evidence of prostitutes is insufficient to sustain a charge of adultery in an action for divorce, yet slight corroboration is sufficient where the defendant failed to take the stand. The failure of

the defendant to produce Rotheroe, an alleged paramour, seems to be equivalent to a failure of a defendant to be a witness. The courts have recognized the difficulty in the way of proving adultery, but it has been held that they must take such evidence as the case permits, circumstantial, direct, or positive, and must bring to bear upon it the tests of observation and experience, in the exercise of good judgment, and that such evidence is to be weighed with prudence and care, and effect given to its just preponderance. Mott v. Mott, 3 App. Div. 532, 38 N. Y. Supp. 261; Moller v. Moller, supra. I do not lose sight of the fact that these cases were tried without a jury, but I cannot distinguish any difference between the duty of the court to exercise a supervision over verdicts, and to set them aside, when for any reason a jury has failed to render such a verdict as the preponderance of evidence requires. But it may be said in the case at bar that the learned justice submitted the specific questions of fact to the jury on evidence which, by his order setting aside the verdict, he finds insufficient to sustain a verdict for the defendant. To hold his order erroneous on that ground would be tantamount to declaring that, when a court has once submitted a case to a jury, it cannot entertain such a motion. The practice is invariably to the contrary. Courts have inherent power over verdicts, and should always exercise a wise discretion in granting or refusing a motion to set them aside; and it seems to us very evident from the prompt granting of the motion in the present case that the court deemed it too clear for argument that the verdict resulted from a failure to appreciate the effect of evidence. No exception was taken by the defendant to the failure of the court to hear argument from her counsel, and we cannot doubt that the court would have heard counsel if any desire to be heard had been expressed. It is evident that the justice before whom the case was tried, and who saw the appearance and demeanor of the witnesses, was far better qualified than is this appellate tribunal to decide the motion to set aside the verdict. If it were necessary to pass upon the merits, I might not disagree with his conclusion. If there be any difference in the rules which should be applied to an order, as between a motion of this character in a divorce case and one in a simple action for the recovery of money, I think a stricter rule should be applied to the former. Indeed, the right of a husband or wife to purity in a consort is far more sacred and valuable, and vastly more important to the public welfare, than the right to recover a mere sum of money; and I have no hesitation, in a case like the present, in approving the exercise of what I consider a sound judicial discretion.

WOODWARD, J., concurs.