("stilen" for stolen, he being a German, and "11/19" for the month and day) and the plaintiff signed the same. He exhibited the gloves, the jacket and the said paper to the superintendent, who sent for the police. They went to the plaintiff's house and brought him to the store. On his arrival the accusation was repeated by his said companion to the superintendent in his presence. He denied it. There is evidence that he hesitated before denying, but that is disputed. He testified on the trial that he did not sign the said alleged confession, but his signatures to the complaint herein, to the bail bond before the magistrate, and made twice during the trial herein at the request of counsel, show positively that he did. If the jury found otherwise, the verdict would have to be set aside, and from the size of the verdict they appear to have done so, for if they had found that he perjured himself on that head it cannot be believed that they would have given him more than a small verdict; viz., for the cause of action for false imprisonment.

As matter of law the superintendent had probable cause on the facts as they were given to him for causing the plaintiff to be prosecuted. The denial of the plaintiff did not suffice to destroy the case of probable cause which was before him. Francis v. Tilyou, 26 App. Div. 340, 49 N. Y. Supp. 799; Rawson v. Leggett, 184 N. Y. 504, 77 N. E. 662.

As to the cause for false imprisonment, his companion watchman had the right to arrest the plaintiff without a warrant, if he caught him in the act, as he says he did, and therefore had the right to call on the police or any one else to aid him; and if that was really what happened, and the plaintiff was guilty, there was not even a technical false arrest and imprisonment. As the goods in question were worth less than $25, the right to arrest without a warrant depended on whether the offense was committed in the presence of the principal in the making of the arrest (Code Cr. Proc. § 177), and if the plaintiff's companion watchman was such principal, the arrest was lawful if the offense was committed in his presence. On the new trial this phase can receive due attention.

The judgment should be reversed and a new trial ordered.

Judgment and order reversed, and new trial granted; costs to abide the event. HIRSCHBERG, P. J., and JENKS and RICH, JJ., concur. BURR, J., concurs in result.

---

### AZZARA v. NASSAU ELECTRIC R. CO.

(Supreme Court, Appellate Division, Second Department. October 8, 1909.)

1. APPEAL AND ERROR (§ 979*)—DISCRETION OF LOWER COURT—NEW TRIAL.
    The decision of a trial justice setting aside the verdict for insufficiency of the evidence will not be disturbed, unless it clearly appears that he improperly exercised his discretion.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3871; Dec. Dig. § 979.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. NEW TRIAL (§ 70*)—INJURIES TO PERSON ON TRACK—INSUFFICIENCY OF EVI-
DENCE.
   In an action for the death of a child struck by a street car, evidence
*held* to authorize the trial justice in his discretion to set aside a verdict
for plaintiff and grant a new trial for insufficiency of the evidence.
   [Ed. Note.—For other cases, see New Trial, Cent. Dig. §§ 142, 143; Dec.
Dig. § 70.*]
   Hirschberg, P. J., dissenting.

Appeal from Trial Term, Kings County.

Action by Salvatore Azzara, as administrator of Andrew Azzara,
deceased, against the Nassau Electric Railroad Company. From an
order setting aside a verdict for plaintiff and granting a new trial, he
appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and GAYNOR, BURR,
RICH, and MILLER, JJ.

M. L. Malevinsky (Frank F. Davis, on the brief), for appellant.
D. A. Marsh, for respondent.

BURR, J. This action is brought to recover for the pecuniary in-
jury resulting to the plaintiff as the father and next of kin of a child
four years of age. The jury found a verdict for the plaintiff, and as-
sessed the damages at $2,675. On motion the verdict was set aside
and a new trial ordered by the learned justice before whom the case
was tried. An appeal is taken from the order entered in accordance
with his decision.

The vital question in the case is whether the child was on the track
between the rails for a period of time sufficiently long to enable the
motorman, had he been exercising reasonable care and vigilance, to
have seen him and brought his car to a stop before running over him,
or whether, after the front of the car had passed the child in safety,
he ran into the running board near the front wheels, and was thrown
down and drawn under the car. The justice presiding at Trial Term
has a peculiar advantage over the court sitting as an appellate tribunal
in determining whether a verdict is or is not contrary to the weight
of evidence. He hears the testimony of the witnesses as it falls from
their lips in response to questions addressed to them. He can see
their manner upon the witness stand. He can hear the very inflections
with which answers to questions are given. He can note whether the
testimony is given carefully and with apparent sincerity, or hesitating-
ly and with an apparent desire to evade and equivocate, when inter-
rogated respecting matters which might seem to the witness to be
unfavorable to the party who had called him. The appellate justices
are deprived of many of these opportunities. The evidence reaches
their minds only through the medium of the eye, after it has been re-
duced to narrative form and is presented on a printed page. They
are not assisted by the ear at all. Almost always there is an atmos-
phere which surrounds a trial before a jury which enables the trained
mind instinctively, and perhaps without being able to give a logical
reason therefor, based upon an analysis of the evidence, to determine

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

whether witnesses are speaking accurately and truly or mistakenly and falsely. The trial justice breathes this atmosphere. The appellate justices are to a great extent deprived of it. For these reasons the decision of a trial justice setting aside a verdict should not be disturbed, unless it is perfectly clear that the discretion confided to him has been improperly exercised.

Five witnesses were called by the plaintiff, who saw the accident or some part thereof. One of them only saw the child after he was under the car. Another could not tell whether he was struck by the front of the car or ran into the side of it. The testimony of the others was somewhat contradictory, and one of them admitted having made statements shortly after the accident to the effect that he did not see it at all. Eleven eyewitnesses of the accident, or some part thereof, were called by the defendant. Outside of the conductor and motorman, most of them were passengers upon the car. They substantially agree that the child was running from the curb toward the car, and came into collision with the running board near the front wheel, was knocked down, and drawn under the car.

Counsel for the appellant argues that the position of the body after the accident, when it was lying under the rear truck, between the motor and pony wheels and about in the center of the track, makes it physically impossible that he should have been struck by the side of the car. We do not think this is absolutely certain. Considering his age and size, it is by no means impossible that, after being struck and knocked down, his clothing, or some part of his person, may have been caught by the mechanism around the front wheels, and in that manner his body drawn underneath the car. The verdict was a large one, considering the age of the child. This may have influenced the trial justice to believe that the jury had not given the case the calm, impartial, unsympathetic consideration which was demanded.

The order appealed from should be affirmed, with costs. All concur, except HIRSCHBERG, P. J., who dissents.