(161 App. Div. 442)

## TAYLOR v. GLENS FALLS AUTOMOBILE CO.

(Supreme Court, Appellate Division, Third Department. March 13, 1914.)

1. HIGHWAYS (§ 184*)—INJURIES—ACTIONS—JURY QUESTION.

In an action by one run down by an automobile, the question of whether the driver was negligent *held* under the evidence for the jury.

[Ed. Note.—For other cases, see Highways, Cent. Dig. §§ 471–474; Dec. Dig. § 184.*]

2. APPEAL AND ERROR (§ 977*)—REVIEW—NEW TRIAL.

While the appellate court will be very slow to reverse a trial court in granting a new trial, the rule does not apply with the same strictness where there have been two verdicts in favor of plaintiff; defendant having been granted one new trial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3860–3865; Dec. Dig. § 977.*]

3. APPEAL AND ERROR (§ 977*)—REVIEW.

It is not only the power of the Appellate Division, but it is its duty, to review the discretionary act of the trial judge in granting a new trial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3860–3865; Dec. Dig. § 977.*]

4. APPEAL AND ERROR (§ 1174*)—REVIEW—VERDICTS.

In a personal injury action by one run down by an automobile, the first jury awarded $500 damages and the second $900. It appeared that the injuries were not serious or permanent. *Held*, that an order granting defendant a new trial on the ground of excessiveness of damages will be reversed on appeal if plaintiff will stipulate to reduce the damages to $500; two juries having found for that amount.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4525; Dec. Dig. § 1174.*]

Lyon and Kellogg, JJ., dissenting.

---

[1] Reported in full in the New York Supplement; reported as a memorandum decision without opinion in 49 Hun, 605.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, Warren County.

Action by Emma L. Taylor against the Glens Falls Automobile Company. From an order granting defendant a new trial, plaintiff appeals. Order reversed on consideration that plaintiff will stipulate to reduce the verdict; otherwise affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Chambers & Finn, of Glens Falls (Walter A. Chambers, of Glens Falls, of counsel), for appellant.

J. Edward Singleton, of Glens Falls (Lyman Jenkins, of Glens Falls, of counsel), for respondent.

SMITH, P. J. This action is brought to recover damages for plaintiff's injury caused, as she claims, by the negligence of the defendant in running her down with an automobile. A new trial has been granted apparently upon the ground that the evidence is not sufficient to establish any cause of action against the defendant.

[1] The plaintiff, with others, was in a sleigh going from Glens Falls to Lake George. The harness broke, and the driver turned up to the side of the road and got out to fix the harness. There is some dispute as to whether he was upon the right or left side of the road going north, but the preponderance of the testimony would seem to indicate he was upon the left side of the road and within three or four feet of the fence. The stop was made at a fork of the road where the road to Luzerne branches off to the west. The plaintiff and another got out of the sleigh, as it may be found, because of their fear of the automobile approaching of which they were warned by the lights. They went to what is called Howe's blacksmith shop, which was in the space in the fork of the two roads leading to Lake George and to Luzerne. This blacksmith shop was from 12 to 15 feet from the Luzerne road and 20 feet from the Lake George highway. The claim of the plaintiff is that, within five feet of this blacksmith shop—where she had gone for safety—the automobile came up behind the sleigh and turned to the left and ran her down. She was struck by the automobile, carried a couple of feet, and went under the automobile, from which place she was afterwards taken by raising the automobile. She claims to have suffered certain injuries by reason of this accident for which the jury have given her a verdict of $900, which the court has set aside. There is abundant evidence from which the jury could have found that the plaintiff was struck while outside of the road and within a very few feet of the blacksmith shop, and from which the jury could have found that the automobile was driven at an excessive speed so that it was compelled to turn into this Luzerne road for the purpose of avoiding collision with the sleigh. The defendant's car was not going to Luzerne, but was going straight on, and the jury may well have found that the sudden turn into this Luzerne road was made necessary only because the car was not under sufficient control to keep upon the road and avoid the accident. The learned trial judge submitted to the jury two questions of negligence: First, the question of excessive speed. The plaintiff had sworn in her judgment the car

was going from 30 to 35 miles an hour, but had stated that she could not tell positively because she was not accustomed to judge of the speed of cars while standing upon the ground. No other witness swore to any specific rate of speed, but all of the plaintiff's witnesses agreed that the speed was not at all diminished until the car got right upon them, when it was turned into the Luzerne highway. Another ground submitted to the jury was whether the accident was caused by the failure of the defendant's servant to have the car under proper control.

The order vacating the verdict does not state the ground upon which the same was vacated. In the opinion which accompanied the order, however, the trial justice says that in his judgment it was incredible that the car, going at the rate of 30 to 35 miles an hour, could make the sudden turn which appears was made, and stop within 10 or 12 feet upon the Luzerne road. He further states:

"It is impossible for me to see how any automobile going at an excessive rate of speed can make a turn at a right angle and remain upon its wheels, or be stopped within ten feet of the turn."

He further says that when the charge of excessive speed is eliminated from the case there is no other ground remaining upon which to support a verdict. By fair interpretation of the evidence the automobile did not turn at right angles, but on a curve. It came, under defendant's evidence, within four or five feet of the shop which by the map is 23 feet west of the sleigh if the sleigh were on the west side of the road. There is evidence that the car was within 10 feet of the side of the road when it stopped. It might well have gone a considerably greater distance, however, after the breaks were applied before coming to that point. As I read his opinion, if this case should be retried upon this same evidence, the trial court would be compelled to grant a nonsuit. When this car came up behind plaintiff's sleigh, the lights should have revealed the existence of the sleigh. The defendant's servant may have been negligent in failing to observe this obstacle in time to get his car under control; any speed may be excessive speed which is so great as to prevent the driver from getting his car under control when he approaches an unknown danger. It is true that the chauffeur swears that he had his car under perfect control and turned into this Luzerne road for the purpose of stopping to see if he could aid the driver of the sleigh, who was in apparent trouble. Some doubt is thrown upon this testimony by the improbability of his turning off into a side road for the purpose where he would have to back up to get into the road proper leading to Lake George in order to continue his journey. In any event, his explanation of the circumstances was for the jury in view of all the other facts in the case, because he was interested as having been the one at fault if the defendant be charged with damages in the action. The crucial fact remains that plaintiff was run down by this car while lawfully either in the edge of the highway or beyond its bounds.

In my judgment it will always be a question for the jury whether the accident was not caused by the negligence of the defendant in

failing to have the car under proper control at whatever speed it was running as he approached this sleigh.

[2-4] This is the second verdict of a jury in favor of the plaintiff. It has been a rule in this department that the Appellate Division will be very slow to reverse the trial judge in the granting of a new trial where he has exercised his discretion in so doing. He has opportunity to see the witnesses, and if he be of the opinion that an injustice has been done he should properly exercise his discretion, and this discretion should probably be exercised more often than it is. Not only does this court have the power, but it has also the duty, to review the discretion of the trial judge. But in this review the fact is recognized that the trial judge has a viewpoint superior to that of the appellate court by his better opportunity at the trial to judge of credibility of the evidence and the justice of the verdict, and due weight is given to that fact. While this rule has been adhered to with reference to the granting of a new trial after a single verdict, it has less force when applied to the granting of a new trial after a second verdict; and where, as in the case at bar, a new trial has been granted apparently not because the verdict is against the weight of evidence, but as without evidence the rule would seem to be inapplicable. The trial judge in his opinion granting the new trial has stated that no bones of the plaintiff were broken and no serious injuries were sustained; and this was apparently one of the grounds upon which the new trial was granted. With his opportunity to see and hear the witnesses, and judge of the credibility of their stories, and with the fact that upon a former trial a verdict of $500 only was obtained, the size of the verdict would seem to be sufficient reason for disapproving of the verdict. Without anything to indicate, however, that the plaintiff would not recover upon another trial, and in view of the fact that two juries have assessed her damages at $500 or more, we are of the opinion that if the plaintiff will stipulate to reduce the verdict to $500 that the verdict, as thus reduced, should be allowed to stand.

Order affirmed, with costs, unless plaintiff stipulates to reduce the verdict to $500; if she shall so stipulate, the order is reversed, and the verdict, as thus reduced, reinstated, without costs to either party.

Order affirmed, with costs, unless the plaintiff will stipulate to reduce the verdict to $500; if the plaintiff will so stipulate, the order is reversed, and the verdict, as so reduced, is reinstated, without costs to either party.

HOWARD and WOODWARD, JJ., concur. LYON, J., dissents in opinion in which KELLOGG, J., concurs.

LYON, J. (dissenting). The verdict in this action was based upon injuries received by plaintiff to her person and property by being struck by defendant's automobile in the early evening of December 28, 1910. The place of the collision was at the angle formed by the intersection of the Glens Falls and Lake George highway, an improved state highway, which ran northerly, and the Luzerne highway, which ran northwesterly. It appears that upon this occasion the plaintiff, in the company of several persons, was traveling by sleigh from Glens Falls to

Lake George, and that when near the intersection of the two highways the driver halted his team for the purpose of repairing his harness, whereupon the plaintiff and two other occupants of the sleigh left the highway and went to the angle formed by the intersecting highways, and, while standing within or just without the angle, the driver of defendant's automobile, which was also bound for a point farther north on the Glens Falls and Lake George highway, seeing the team and sleigh ahead in the highway, undoubtedly on the left-hand side of the road, with the driver standing at the heads of the horses, decided, as he testified, to stop to see what the trouble was, and in order to take his lights off the horses turned his car into the Luzerne highway to the left, and in doing so struck the plaintiff, inflicting the injuries complained of. Several witnesses called by the plaintiff testified that the automobile did not make the turn into the Luzerne highway until it had come close to the sleigh, and then made the turn at nearly a right angle and at an unreasonably high rate of speed, and passing up the Luzerne highway struck the plaintiff while standing within the angle and within a few feet of the shop located therein, and at a point 8 or 10 feet northerly of the north line of the Luzerne highway and 12 or 15 feet westerly of the west line of the Glens Falls and Lake George highway. Upon this point one of the plaintiff's witnesses testified:

"When he made this turn he was very close to the sleigh, about two feet; it may have been less than that; it was very close, not over two feet. I saw this machine come up the road at a very rapid pace, go within two feet of this sleigh in which I had been sitting, and then turn·suddenly to the left. Apparently he did not slacken the speed of the car from when I first saw him until he struck Mrs. Taylor."

Another of plaintiff's witnesses testified:

"As the automobile approached us from the rear I did not observe that it slowed up at all. When the automobile got very near to the sleigh it turned sharply to the left and ran into the plaintiff."

The plaintiff herself testified:

"The automobile was coming very rapidly when it made the turn; when it struck me it was going about 30 or 35 miles an hour. * * * I could see the lights of the automobile a considerable distance south of the Hudson Valley tracks and saw the machine. It was coming very fast. It did not slacken its speed as it approached me. I do not know what the speed was when it struck me. * * * He must have slackened to turn. * * * I do not know the rate of speed of the car just before it struck me, as it came down the State road to the Luzerne road."

The plaintiff and some of her witnesses testified that the place where the plaintiff was struck was outside the bounds of the Luzerne highway. Upon the other hand, the driver of the car testified that he approached the sleigh at the rate of from 3 to 5 miles per hour, and that he made the turn into the Luzerne highway, not at a sharp angle, but that he turned off from the main highway into the Luzerne highway when about 40 feet from the sleigh according to his recollection, and that he did not go within 18 feet of the shop, and that the collision resulted from the plaintiff running in front of the car while within the limits of the highway. The driver of the car and the president of the

defendant testified that on the evening of the accident they examined the impressions made by the wheels of the car and the body of the plaintiff, which were plainly visible in the freshly fallen snow, and that the front end of the car had stopped within 10 feet of the main highway, and that the plaintiff had fallen within the bounds of the Luzerne highway. Relative to her injuries, the plaintiff testified to having suffered various serious bodily injuries and that one of the results of the collision was a miscarriage five or six days thereafter. The plaintiff testified that she was attended by no physician at the time of the miscarriage, although there was a physician in the immediate neighborhood. The testimony of her husband was her only corroborative evidence upon that subject. The claim that plaintiff had suffered a miscarriage was positively contradicted by two women, with one of whom plaintiff boarded in November, and with the other in December. The testimony of plaintiff that she sustained serious injuries was not supported by the medical testimony. The family physician, who treated her on the evening of the injury and thereafter, testified:

"At the time I examined the plaintiff, I did not think she was suffering from any permanent injury. I could not find anything that I thought would be permanent. Q. The injuries that you found were in your opinion trivial in character? A. Yes, I thought she would get over them in a few days."

At the close of the evidence, plaintiff's counsel stated, answering the motion for a nonsuit, that plaintiff claimed that the negligence of the defendant consisted in the driver of the car turning the corner into the Luzerne highway at a high rate of speed, and also claimed that the plaintiff was struck after she had gone to a place of safety where she had the right to go, outside the limits of the highway. The court submitted the question as to defendant's negligence to the jury upon both propositions, saying as to the latter:

"Then there is a claim made by the plaintiff that the chauffeur was negligent because he did not have his car sufficiently under control to stay within the bounds of the Luzerne highway; that he went off that highway and struck the plaintiff, who was outside of the traveled portion of that road. Concerning that question there is a difference between the witnesses in the case. Those who examined the marks upon the ground that following day or the night of the accident tell you that the marks of a person lying upon the ground were seen by them and that they were well within the bounds of the traveled portion of the highway. I assume it to be true that a prudent man in making a turn off a main road into a side road of this character must have his car under such control that he can keep it within the limits of the highway down which he is going. Therefore if he did take his car outside of those limits he may have been negligent, and that negligence may have been the cause of the injury."

In the opinion setting aside the verdict and granting a new trial upon the ground that the verdict rendered was against the weight of evidence, the court said:

"As I understand the case for the plaintiff, the sole charge of negligence made against this defendant was that the automobile was being driven at an excessive rate of speed. Although testimony was given to the effect that the automobile was traveling at the rate of from 30 to 35 miles an hour, and at this rate of speed made a turn from one highway into another, yet this testimony seems utterly incredible for the reason that the turn made was almost at a right angle, and for the further reason that according to the undisputed

proof the automobile did not go up the highway into which the turn was made more than ten feet. It is incredible also from the fact that the plaintiff, according to her own testimony, when struck by the automobile was carried by it only 2 feet, and according to all the proof in the case, although she was thrown down upon the road and a portion of her body went under the car between the two front wheels, no bones in her body were broken and no serious injuries were sustained. It is impossible for me to see how any automobile going at an excessive rate of speed can make a turn at a right angle, and remain upon its wheels or be stopped within 10 feet of the turn. When the charge of excessive speed is eliminated from the case, there is no other ground remaining upon which to support the verdict."

Thus the action of the trial court in setting aside the verdict was based, in part at least, upon the positive belief upon his part that the jury had been wrongly influenced by the testimony upon the part of plaintiff's witnesses as to the rate of speed of the car when it turned into the Luzerne highway, and as to the seriousness of the injuries sustained by the plaintiff. The court was plainly of the opinion that portions of the testimony upon both of those subjects were greatly exaggerated and unreliable, and had led the jury to render an improper verdict, and hence that in the interests of justice the verdict should be set aside and a new trial had. The law is well settled that only the abuse of discretion by the trial judge in setting aside a verdict as against the weight of evidence will be interfered with, as is evidenced by the following authorities:

"While the General Term doubtless has power to review the discretion of a trial judge, as exercised upon a motion for a new trial, upon the ground that the verdict was against the weight of evidence, it is not in its policy to interfere with such discretion in awarding a new trial, unless it is apparent there has been an abuse thereof." Slater v. Drescher, 72 Hun, 425, 25 N. Y. Supp. 153.

"A trial judge is invested with power to set aside a verdict and grant a new trial on the ground that the verdict is against the weight of evidence or because the damages are excessive or insufficient or when for any other reason substantial justice would be promoted thereby; and it is at all times a serious matter for an appellate court to reverse on the ground of error an order made by a trial judge setting aside a verdict as against the weight of evidence." Glassford v. Lewis, 82 Hun, 46, 31 N. Y. Supp. 162.

"We think a trial judge is invested with power to set aside a verdict and grant a new trial on the ground that the verdict is against the weight of evidence, or because the damages are excessive or insufficient, or when, for any other reason, substantial justice would be promoted thereby. This power we think an important one, and one that ought perhaps to be more exercised by trial courts for the proper protection of the rights and interests of litigants." "Great, if not conclusive, weight must be given to the action of a trial justice who sets aside a verdict as against the weight of evidence, because of the peculiar advantages he has in seeing the witnesses and in hearing their testimony, while the Appellate Division is confined to printed testimony reduced to a narrative form." Suhrada v. Third Ave. R. R. Co., 14 App. Div. 361, 43 N. Y. Supp. 904.

"An order setting aside a verdict as against the weight of evidence, made by the judge who presided at the trial, will not be reversed unless it appears beyond all cavil, that great injustice has been done to the defeated party." Lund v. Spencer, 42 App. Div. 543, 59 N. Y. Supp. 752.

"The opportunity of the trial court to see and hear the witnesses sworn at the trial gives to it such a peculiar advantage over the appellate court that the latter court will give great, if not conclusive, weight to the action of the former court in setting aside a verdict as against the weight of evidence." Silverman v. Dry Dock, E. B. & B. R. Co., 69 App. Div. 22, 74 N. Y. Supp. 481.

"The order made by the justice who presided at a jury trial, setting aside the verdict as against the weight of evidence, will not be reversed by an appellate tribunal unless it appears, beyond all cavil, that great injury has been done to the defeated party, or unless there has been an abuse of discretion." Serwer v. Serwer, 71 App. Div. 415, 75 N. Y. Supp. 842.

"Upon the question of whether the learned trial court erred in setting aside a verdict, we must keep in mind the rule which controls an appellate court in approaching the consideration of that question, and which requires that it should not disturb the disposition made unless it appears that the discretion vested in the trial judge has been exceeded or abused. * * * In addition, the trial judge had the advantage of seeing the witnesses and their manner of testifying, an advantage which is not to be lightly disregarded where the question is presented as to the right which is vested in him to exercise his discretion on a motion to set aside a verdict. The character of witnesses as affecting their credibility is also an element, the force of which can with greater certainty be determined by the trial judge. * * * We have not the disposition, even if we had the power, to lightly interfere with the discretion of a trial judge in setting aside a verdict, because it is a power which is rightly vested in him and which he is justified and should exercise in every case where he believes that the jury have been affected either by prejudice or passion, or where, upon all the facts, he thinks that in the interest of justice there should be a new trial before another jury." Robinson v. Interurban Street Ry. Co., 113 App. Div. 46, 98 N. Y. Supp. 918.

"As a trial justice, in determining whether a verdict is or is not contrary to the weight of evidence, has the advantage of observing the demeanor of the witnesses, etc., his decision will not be disturbed unless it is perfectly clear that his discretion has been improperly exercised." Azzara v. Nassau Electric R. Co., 134 App. Div. 167, 118 N. Y. Supp. 830.

This doctrine was reiterated in the following cases: Russell v. Rhinehart, 137 App. Div. 848, 122 N. Y. Supp. 539; Burns v. N. Y. & Long Island Traction Co., 139 App. Div. 145, 148, 123 N. Y. Supp. 474; Nowakowski v. N. Y. & N. S. Traction Co., 158 App. Div. 949, 143 N. Y. Supp. 1133.

"We have but recently expressed our opinion of the proof which should justify interference on our part with the discretion of the trial court. Azzara v. Nassau Electric R. Co., 134 App. Div. 167, 118 N. Y. Supp. 830. After a careful examination of the record before us, we feel that we should not be justified in overruling in this case the discretion exercised by the trial court in granting a new trial." Arker v. Cohen, 136 App. Div. 871, 122 N. Y. Supp. 4.

Thus, by an unbroken line of decisions for more than 20 years, it has been held that only in the event of an abuse of discretion in setting aside a verdict and granting a new trial upon the ground that the verdict was against the weight of evidence will the appellate court interfere with the decision of the trial justice. While this court would not be justified in arbitrarily refusing to review or reverse such an order or in failing to scrutinize the action of the trial justice in granting the order, the court should be governed by this long established rule, and not interfere with the action of the trial justice in granting the order, unless in the opinion of the court his act was an abuse of discretion, in which event the court would be fully justified in reversing the order. A careful consideration of the evidence in the case at bar, a brief review of material portions of which has been given herein, is convincing that there was no abuse of discretion upon the part of the trial justice in making the order appealed from. Indeed, the action of this court in affirming the order of the trial court in setting aside the verdict and

granting a new trial, unless the plaintiff will stipulate to reduce the verdict by nearly one-half, is an admission by this court that in its opinion the verdict was not warranted, and that the trial court should not have permitted the verdict as rendered to stand. Furthermore, it assumes that this court is better able to judge from the printed record before it what verdict the jury should have rendered, than the able and conscientious judge before whom the case was tried, who had the advantage of seeing the witnesses upon the stand and hearing them testify. Applying a far less stringent rule than that laid down by the preceding authorities would require an affirmance of the order appealed from. Although a third trial of this action will be rendered necessary in case the order of the trial justice be affirmed, and while an end of litigation is desirable, yet it is far more important that the case when decided shall be rightly decided than that another trial should be avoided.

The order appealed from was right and should be affirmed.

KELLOGG, J., concurs.