(165 App. Div. 693)

### COTTRELL v. COTTRELL.

(Supreme Court, Appellate Division, Second Department.   January 15, 1915.)

1. DIVORCE (§ 184*)—APPEAL—REVIEW—SETTING ASIDE VERDICT.
   On appeal from an order setting aside a verdict in an action for divorce, finding the defendant not guilty of adultery on the ground that the verdict was against the weight of the evidence, while the order will not be reversed, unless it is clear that it was an improper exercise of discretion, the entire record must be examined, to determine whether the court could have reached the conclusion that the verdict was in flagrant disregard of clear and convincing proof.
   [Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 570–573; Dec. Dig. § 184.*]

2. DIVORCE (§ 151*)—EVIDENCE—SETTING ASIDE VERDICT.
   In an action for divorce, evidence *held* not to establish the defendant's guilt of adultery so clearly that the trial court was authorized to set aside a verdict in his favor.
   [Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 509–513; Dec. Dig. § 151.*]

3. DIVORCE (§ 129*)—CIRCUMSTANTIAL EVIDENCE—SUFFICIENCY.
   While it is not necessary in a divorce action that circumstantial evidence of adultery should be so strong as to admit of no other conclusion than defendant's guilt, the plaintiff cannot prevail, where the circumstances are as consistent with innocence as with guilt, or are reconcilable with innocence.
   [Ed. Note.—For other cases, see Divorce, Cent. Dig. §§ 411–441, 454: Dec. Dig. § 129.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term, Kings County.

Action for divorce by Phœbe C. Cottrell against Royal L. Cottrell. From an order setting aside a verdict in favor of the defendant, the defendant appeals. Reversed, and verdict reinstated.

Argued before JENKS, P. J., and BURR, THOMAS, RICH, and PUTNAM, JJ.

James S. Darcy, of New York City (Charles H. Bailey, of New York City, on the brief), for appellant.

Frank X. McCaffry, of Brooklyn, for respondent.

JENKS, P. J. [1] This is an appeal from an order that sets aside a verdict for the defendant upon the issue of his adultery, and grants a new trial upon the ground that the verdict is against the weight of evidence. We should not disturb the order, unless it is perfectly clear that it was an improper exercise of discretion. Azzara v. Nassau Electric Railroad Co., 134 App. Div. 167, 118 N. Y. Supp. 830. But in determination of this question in this kind of case, we must examine the record to ascertain whether the trial justice could have reached the conclusion that the verdict was in "flagrant disregard of clear and convincing proof furnished by the uncontradicted testimony of disinterested witnesses." I quote the language of Bartlett, J., writing for the court in Donnelly v. Donnelly, 50 App. Div. 453, 64 N. Y. Supp. 83.

[2] Frequently and justly the appellate courts comment on their disadvantage of not having seen or having heard the witnesses; but we must also consider that this order upsets the finding of the triers of fact who, as well as the trial justice, had the witnesses before them, and that in this particular case we think that the question does not primarily turn upon the credibility or reliability of opposing witnesses, but rather upon the quality of the proof adduced by the plaintiff and the admitted character of the witnesses called by her. The proof of the adulteries depends almost altogether upon the testimony of a young woman, who testifies that she was hired as a private detective to spy upon the defendant and his alleged paramour. We make no reflection against her personally; but we must regard her as one who for hire put herself in the category of witnesses whose testimony is received with caution and must have corroboration, not under a rule of evidence, but one that exists "for the guidance of judicial conscience." Winston v. Winston, 165 N. Y. 553, 59 N. E. 273. She did not testify as the witness of any carnal act. The character of such an act rarely permits such testimony. She did not testify as a witness to any compromising situation that pointed irresistibly to the recent commission or to the intended immediate doing of any carnal act. Testimony of this kind often is adduced in such cases. She did not testify that this man and woman, to quote the language of the Chancellor in Mayer v. Mayer, 21 N. J. Eq. 246, "were together under suspicious circumstances, which cannot be easily accounted for unless they had that design, or which could not be well be explained without it."

She hired a bedroom in an apartment kept by the alleged paramour, and for some months as a lodger she kept espionage, recorded in note-

books and transmitted in reports. This apartment consisted of a library or sitting room, several bedrooms, and bathroom. It was occupied by the alleged paramour and by several boarders, of whom all save this detective were young women students of the Pratt Institute. The defendant, a teacher in a public school, lived in the neighborhood under the same roof as his wife and their son; but apparently the husband and wife were estranged, and theretofore had been parties to an action for a limited divorce. The testimony of this detective shows, and indeed there is no dispute, that the defendant was a frequent visitor of this alleged paramour in this apartment, and was received by all of its inmates on terms of familiar acquaintance, for they and the alleged paramour lived, apparently, on terms of social equality. The testimony of this detective is that, on several occasions when the defendant and the alleged paramour were alone together late in certain evenings in this library or sitting room, the detective when in her own bedroom heard a "squeaking" that seemed to her to come from a couch in the library, that this sound continued at regular intervals for some minutes, and that on one or more of these occasions she heard a "groan." She is corroborated as to this squeaking on several occasions by her husband, who was then her betrothed, and who at such times was with her in her bedroom.

The defendant testified that he was guiltless, and called a number of witnesses, including several of the young students, apparently respectable and disinterested young women, who testified that the couch in the library did not squeak, but that a rocking chair therein, when occupied, gave forth such sound. Thus, even if the jury believed that this detective heard this sound, there is overwhelming proof that it came from this chair, and not from the couch. It is true that the witness was permitted to testify to her opinion that the two persons at these times were in illicit intercourse; but perhaps the jury were not convinced that an unmarried woman of unassailed morality was competent to express this opinion, and it is entirely to her credit if they were loath to believe that she could be. This testimony of this detective is all that relates directly to the facts of the adulteries. But this testimony only adduces a physical fact that the couch squeaked, and that fact is but the inference of the witness, and thus the jury were asked to find the facts of the carnal acts as an inference from an inference of the witness. But, as I have said, she was contradicted by a number of apparently respectable and disinterested witnesses as to the physical cause of the squeaking. There was proof from other witnesses that this man and woman went out at night frequently together, with perfect freedom. They were followed by a man who was a private detective, but he does not testify that he ran them to earth in any place more disreputable than a restaurant or a theater. There is no proof that permits the inference that they knew their footsteps were dogged.

The jury might well have thought that these persons, if inclined to illicit love, would have chosen some other place for their misconduct than a sitting room or library in common use by a number of apparently respectable young women, at times when, even late in the evenings, access was free and the doors were unlocked; and perhaps

they were convinced that, if this man and woman went out together for no improper purpose, they did not associate together in this library for carnal intercourse, and they might well have considered that this young woman detective's own testimony indicates that on one or more of these occasions, in her avocation and to justify her hire, she had but to open a door for proof positive, so far as her testimony was concerned.

[3] While it is not the law that circumstantial evidence as to adultery must be so strong that it admits of no other possible conclusion (Allen v. Allen, 101 N. Y. 658, 5 N. E. 341), yet the rule of Pollock v. Pollock, 71 N. Y. 137, we think still obtains, in so far as it declares that when circumstances are as consistent with innocence as with guilt, or are reconcilable with innocence, the plaintiff cannot prevail. See Roth v. Roth, 90 App. Div. 87, 85 N. Y. Supp. 640, for discussion of Allen v. Allen and Pollock v. Pollock, supra. Roth v. Roth, supra, was affirmed 183 N. Y. 520, 76 N. E. 1107, and although without opinion, we may note that the discrimination between the two cases was not commented upon.

There was testimony of the private detective, who trailed after these persons when they went out together, to acts of affectionate familiarity in a street surface car and to kisses exchanged in a public street. The jury could have found frequent association on terms of affectionate familiarity, although the defendant's witnesses, who comprised some of these young women, denied observation of any acts of affectionate demonstration. There is a letter of the defendant of rather mawkish sentiment, which indicates more than dignified intimacy between this man and woman, and there is proof that shows the defendant on one or two occasions was silly beneath his years in his frolics in the presence of witnesses. But all these circumstances, when considered with the other testimony, are not sufficient to overturn the verdict.

The order is reversed, and the verdict reinstated. All concur.