Gr. Egbert Wither, J.
In this action tried without a jury, plaintiff seeks an absolute divorce from his wife from whom he was separated under an agreement dated in 1951. The evidence shows that between 1952 and 1956 the defendant had very frequent opportunity for adulterous relations with a man known as ‘ ‘ Frank ’ ’; and the principal question in the case turns on the proof of inclination to adultery.
It appears that in 1952 and for two or three subsequent years the defendant and her three children, who in 1952 were of the age of 13, 9 and 6, respectively, lived in an apartment in a house at the corner of Jay and Murray Streets in Rochester; that said Frank worked for a coffee company and had a light delivery truck with the name of the coffee company thereon, and that on several days each week he would park the truck on Murray Street and enter defendant’s apartment and remain there from one to three hours. The evidence is that Frank would call upon the defendant in the mornings of school days after the children had left for school, or would come on Saturday or Sunday afternoons when the children had gone to a movie. In 1956 defendant moved to an apartment at 131 Weeger Street, Rochester. The landlord testified that said Frank parked his said truck near the house and called on defendant for a period of two or more hours several times weekly. There is no evidence that anyone ever saw defendant and Frank embrace or kiss each other.
The defendant and her older daughter confirmed that Frank was a frequent visitor at their home and said that he was married and living with his wife, and was a friend of defendant and her family. There is no evidence that Frank’s wife ever visited the defendant and her family.
Defendant denied having sexual relations with Frank and denied that he ever hugged or kissed her. The daughter, now 17 years of age, who was obviously very partisan in favor of her mother, supported defendant’s story, and said that Frank was just a friend of the family and often helped her with her lessons. Both denied knowing Frank’s last name, although defendant admitted knowing him for at least eight years.
*204 The court was not impressed with the testimony of the defendant and her daughter. Their manner and the content of their testimony indicate that they are not worthy of belief. It was also apparent that they were seeking to shield Frank; although why they should think it necessary to do so is not easy to grasp, in view of the admitted attention he showed defendant regularly over a period of at least five years.
There is evidence that on one occasion of Frank’s visits at the Murray Street apartment a witness sent her daughter to the apartment to see said Frank about delivering some coffee, and the daughter tried the door and could not open it.
The landlord at 131 Weeger Street said that on one evening when Frank left defendant, the landlord heard defendant say to Frank, “ Grood night, my darling.”
The foregoing is the extent of the evidence; and the question is whether the plaintiff has established sufficient inclination to adultery for the court to find under the circumstances that defendant and Frank committed adultery.
The court is mindful of the rule that mere suspicion of adultery is not enough. (Pollock v. Pollock, 71 N. Y. 137; Dempsey v. Dempsey, 155 Misc. 693, affd. 244 App. Div. 792.) In Moller v. Moller (115 N. Y. 466, 468) the court said, “ The consequences which follow a judgment of divorce are so serious and momentous that such a judgment should not be granted without the evidence which furnishes the basis therefor, is, after very careful scrutiny, satisfactory and such as can command the confidence of a careful, prudent and cautious judge. But the illicit amours of faithless husbands and wives are usually clandestine, and their wicked paths are hidden from public observation; and hence courts must not be duped, and they must take such evidence as the nature of the case permits, circumstantial, direct or positive, and bringing to bear upon it the experiences and observations of life, and thus weighing it with prudence and care, give effect to its just preponderance.”
The court does not need to be convinced beyond all doubt of the fact of adultery, but the evidence must be more consistent with guilt than with innocence. The court may not refuse to give the facts and circumstances their plain and natural significance. (Allen v. Allen, 101 N. Y. 658; Cottrell v. Cottrell, 165 App. Div. 693; Kay v. Kay, 235 App. Div. 25; Dickenson v. Dickenson, 192 Misc. 635.) In the Pollock case, (supra) and cases with similar holding, the man and woman were in frequent association for plausible, legitimate reasons, and it was held that their association was as consistent with innocence as with guilt. In the case at bar, no satisfactory legitimate explanation *205 has been given for the persistent attention which said Frank gave to the defendant.
The court concludes that ample opportunity for adulterous relations existed throughout the years 1952 through 1956, that defendant’s conduct in denying her knowledge of Frank’s last name, in receiving him into her home regularly when her children were away, in locking the door while he was there and in saying to him, ‘ ‘ Good night, my darling ’ ’ are such facts and circumstances as to lead to the reasonable and just conclusion that she and Frank had inclinations to commit adultery and that they did commit adultery. Judgment of divorce is therefore granted to the plaintiff.
This is the decision of the court under section 440 of the Civil Practice Act.
Submit judgment accordingly.