Benjamin Brenner, J.
The defendant wife, legally separated by a decree of this court, moves to suppress evidence of her alleged adultery. The evidence, complete with photographs, is claimed to have been secured by the plaintiff husband upon his forceful entry and raid of the wife’s separately maintained apartment. She contends that her right to exclude the evidence has newly arisen by virtue of the decisional mandate of the United States Supreme Court in Mapp v. Ohio (367 U. S. 643) which, she says, now gives real effect to her constitutional and *601 statutory rights to the privacy of her person. In effect, she maintains that a spouse may no longer establish the adultery of the other if it be uncovered through unreasonable search of her legally established private residence.
The husband, opposing suppression, claims that Mapp has made no such drastic change of the exclusionary rule in this State as to evidence obtained by a private individual and offered in a civil case. He says it has been altered only to the extent of requiring all State courts to exclude evidence in criminal cases secured by police and governmental authorities through unreasonable search and seizure. Moreover, the husband denies the use of force and contends that evidence of his wife’s adultery in the separately maintained residence may not be suppressed as she has no constitutional right to commit it. In essence the defendant insists upon the right to invade the legally established separate residence of the spouse and to uncover and prove adultery committed therein, intimating that he may at least take one look and tell what he saw, whether or not he was invited to do so.
Mapp did indeed radically alter the exclusionary law in this and other States which had not previously adopted their own exclusionary rule (see Appendix in Elkins v. United States, 364 U. S. 206, 224). It now requires all State courts to apply the exclusionary rule, previously confined to Federal courts by the Supreme Court, to evidence procured by law officers and governmental officials through unreasonable search and seizure in violation of the Fourth Amendment to the Federal Constitution. [The requirements of the Fourth Amendment had previously been made operative against the States by virtue of the due process clause of the Fourteenth Amendment (Wolf v. Colorado, 338 U. S. 25). But there the court specifically refused to apply the rule to State courts to effectuate those requirements (Wolf v. Colorado, supra, p. 33)].
The Court of Appeals in People v. Loria (10 N Y 2d 368) acknowledged and confirmed this change in the rule. That decision went further declaring (p. 374) “ There appears to be no bar to defendant’s making an application to the court in advance of trial to supress the challenged evidence ”. Thus, if the exclusionary rule may now, as the wife urges, be extended to evidence procured by a private individual through unreasonable search when offered in a civil trial, then there is authority for suppression upon motion prior to trial.
In arguing for the extension of the rule, the wife frankly admits riding the crest of these current holdings. Her observation that New York is on the threshold of applying the doctrine *602 of the exclusionary rule in civil suits is a tacit admission that Mapp did not directly do so nor did the Court of Appeals in People v. Loria (supra) do so. Moreover, unreasonable search by law officials and intrusion by Government authority are the plain concern and objectives of the safeguards provided by the first 10 amendments to the United States Constitution and particularly to the Fourth Amendment. (Silverman v. United States, 365 U. S. 505, 511; People v. Tarantino, 45 Cal. 2d 590; Marshall v. State, 182 Md. 379.) Moreover, the defendant cannot rely upon section 12 of article I of our State Constitution which bars unreasonable searches and seizures as it is settled law that “ The provisions of section 12 of article I of the State Constitution * * * relate solely to the soverign authority and its agencies and not to individuals ”. (People v. Appelbaum, 277 App. Div. 43, 45, affd. 301 N. Y. 738.)
All this does not mean that Mapp is not helpful to the wife’s cause, or that it does not justify a logical extension and liberalization of the rule. On the contrary, I think it does. While Mapp is no authority for the proposition that the State and Federal Constitutions offer safeguards against the actions of private individuals, it surely does point the way to a re-examination of those very same rights protected by the statutory law of this State (Civil Rights Law, § 8). For, it seems to me, Mapp does give rise to the reasonable inference that if States may no longer accept evidence which tends to “ flout the insolence of office” (People v. Defore, 242 N. Y. 13, 25, cert, denied 270 U. S. 657) despite the salutary need to protect society against crime, that evidence of invasion of privacy by nonofficials should also be rejected even in private litigation. In other words, if the State courts may no longer permit disclosure of crime ferreted out by unreasonable search, in the name of crime prevention and detection, is there any further necessity or incentive to give judicial sanction or to lend the forum of the civil courts to individuals who would use evidence obtained in the course of flouting basic civil rights? So, too, if decisional law in this State, prior to Mapp, is relied upon, it seems fair to say that this body of law rests upon what was, until Mapp, thought to be a need to give a freer hand to governmental authority to ferret out crime and thereby protect society. (People v. Defore, supra.) As such motivation can no longer be urged the courts of this State would appear to be free to give force to the plain intendment of the strictures of our Civil Rights Law against unreasonable search if such law can fairly be said to be applicable to private conduct. For, as urged here “ the protection is even more necessary against a private citi *603 zen, who is not especially trained or enjoined to enforce the law, as is a public officer, who is less likely to stray.”
This leads to a close examination of section 8 of the Civil Rights Law which employs the precise language found in section 12 of article I of the State Constitution and of the Fourth Amendment to the United States Constitution forbidding unreasonable intrusion upon privacy. This statute antedated our constitutional provision by some 100 years. (It first appeared in the Revised Statutes of 1828 [Pt. I, ch. IV, § 11]), and even when the Constitutional Convention of 1938 added section 12 of article I in words identical to that of section 8 of the Civil Rights Law, the statute was not eliminated. I believe that the statute was permitted to remain intact because the constitutional provision has applicability only to official acts (People v. Appelbaum, supra) while section 8 of the Civil Rights Law affects both private persons and representatives of the sovereign State. This is evidenced by the fact that other sections of article 2 of the Civil Rights Law, known as the Bill of Rights, of which section 8 is a part, apply to both private and official action (Civil Rights Law, §§ 3, 5, 9,16,17).
In People v. Defore (supra) Judge Cabdozo long ago recognized the applicability of the Civil Rights Law to private conduct, stating, at page 21: “We find nothing in the statute (Civil Rights Law, § 8) whereby official trespasses and private are differentiated in respect of the legal consequences to follow them. All that the statute does is to place the two on an equality.” It is true, of course, that the conclusion of that revered jurist was that evidence obtained by unreasonable search or seizure, whether private or official, was admissible, but it does demonstrate an awareness by him that section 8 was directed to private as well as official acts. So, if we are to be consistent, as he urged in his opinion, we should presently exclude evidence obtained by private persons as the natural consequence of the new rule excluding evidence obtained by officials.
In Michigan, the exclusionary rule has been applied to evidence obtained by private persons sought to be introduced in a civil suit (Lebel v. Swinciki, 354 Mich. 427), while other States have rejected it (People v. Johnson, 153 Cal. App. 2d 870; Walker v. Penner, 190 Ore. 542; Kendall v. Commonwealth, 202 Ky. 169; State v. Owens, 302 Mo. 348). It should be pointed out however that the decisions in other States which have refused to apply the rule to the acts of individuals, were all prior to the Mapp decision and, what may be more significant, they all relied heavily upon Burdeau v. McDowell (256 U. S. 465) which appears to have been overruled by Elkins v. United States (364 U. S. *604 206, supra) and Williams v. United States (282 F. 2d 940, 941). They cannot, therefore, be considered as guideposts upon this unmarked road.
The facts must now be examined to determine whether the husband’s intrusion was unreasonable, in violation of the Civil Eights Law (or of any penal provision as to unlawful entry) for, clearly, if no unreasonable intrusion was perpetrated, the wife could not suppress the evidence he seeks to produce. Of course, the fact that neither papers nor effects were seized and that the alleged evidence of adultery sought to be excluded consists only of photographs and the memory of what was in open view and disclosed by mere observations is of no consequence and has been so held upon construction of the Fourth Amendment. (McGinnis v. United States, 227 F. 2d 598 [C. A. 1st, 1955]; United States v. Dixon, 117 F. Supp. 925 [U. S. Dist. Ct., N. D. Cal., 1949].) But the qualifying word “unreasonable ” in both the State Constitution and Civil Eights Law does need independent construction. For, as the conduct of law officers is not being examined, the cases construing the term “unreasonable search ” offer no criteria and, obviously, no New York civil case construing the term, as applied to private search, can be cited.
It is not disputed that by virtue of the judgment of separation obtained by the wife in this court on April 5,1961, the wife could lawfully live apart from her husband and that she procured and maintained her own apartment and was entitled to legally maintain it as her own private abode. If the wife’s version of the affair were conceded, namely, that the husband conducted a violent raid, forceably gaining entrance through a breaking of the door lock of that apartment and, against her pleading and protestation, forced his way and those of his raiding party into all of its rooms, such a breaking and search, in the absence of a police officer having a search warrant, would be illegal and obviously unreasonable. There is no such concession. Yet, even on his own version of the facts there appears to be no need for a hearing to inquire into the propriety of the husband’s entry. According to him, he and his investigators were standing watch in the street in the early morning hours. At 3:00 a.m. the wife and her alleged paramour entered the building. They then waited about half an hour to permit reasonable preparation for the alleged amorous adventure. Whereupon, using a key, the procurement of which is not explained (nowhere does he deny the wife’s allegation that she never gave him a key or for that matter even disclosed to him where she was living), they gained entrance, took pictures of the principals and searched the rooms. *605 He was not accompanied by a police officer armed with a search warrant and makes no pretense of seeking to prevent the commission of the crime of adultery, freely admitting that he sought only to witness it and prepare evidence of its commission. Nor does he urge the right of a citizen arrest for obviously he lacked that right, as no crime had been committed in his presence prior to the entry and no felony in fact had been committed even though not in his presence (Code Grim. Pro., § 183; People v. Governale, 193 N. Y. 581), adultery being a misdemeanor (Penal Law, § 101). The raid was deliberately planned and the raiders waited in the small hours of the morning to execute it. Certainly no invitation was sought or extended to enter the privacy of the home. However desirable to the husband to gain evidence of the wife’s promiscuity, or costly to him their continued legal separation, this was her private residence, sacred to her as its occupant under the decree, and it could not be entered and intruded upon, clandestinely and possibly in violation of section 405 of the Penal Law forbidding unlawful entry. To construe the entry on these facts as other than unreasonable would do violence to the plain meaning of the word, regardless of the illegality of such entry. It is the planned, deliberate raid and search accomplished through an uninvited entry that makes the search unreasonable and the fruits thereof should therefore be unacceptable in a court of law.
There are few criminal sanctions available in this State against violators of privacy. And it is rather doubtful whether they would prove any more efficacious against either an outraged or spiteful spouse than they were against officers of the law prior to Mapp. It may be urged, too, that the exclusionary rule in dissolution cases may hinder the procurement of decrees of divorce despite the availability of direct evidence of adultery. Surely such decrees will continue to be available in the great mass of “ arranged ” cases where the spouse and raiding party are not only peacefully invited but anxiously awaited and welcomed with open arms. Or, if it should be said that the rule may halt decrees of divorce in nonarranged cases, because of the absence of direct evidence of adultery, I call attention to decisional law which grants them in the absence of such direct proof. (Allen v. Allen, 101 N. Y. 658; Fleck v. Fleck, 6 Misc 2d 202.)
Finally, it may be argued that exclusion of the evidence here is contrary to public policy as it will promote adultery and protect the adulteress. It is doubtful that a court’s ruling could increase or diminish sin but, as in Mapp, it could protect the innocent even at the risk of an escape by the guilty. If now, *606 because of Mapp, even evidence of criminality is sacrosanct to protect those who are innocent, why not exclude evidence of infidelity to protect from nightly visitation the spouse who is also innocent? This protective concept has been repeatedly enunciated. (See dissent of Mr. Justice Jackson in Brinegar v. United States, 338 U. S. 160, 181, cited with approval by the majority in Elkins v. United States, supra, p. 217.) The extension to civil suits of the exclusionary rule will do no violence to that concept. Bather, will it complement and make truly meaningful the basic right that11 A man can still control a small part of his environment, his house; he can retreat thence from outsiders, secure in the knowledge that they cannot get at him without disobeying the Constitution. That is still a sizable hunk of liberty — worth protecting from encroachment. A sane, decent, civilized society must provide some such oasis, some shelter from public scrutiny, some insulated enclosure, some enclave, some inviolate place which is a man’s castle.” (United States v. On Lee, 193 F. 2d 306, 315 [C. A. 2d, 1951].)
A final word must be said in simple candor. The divorce laws of the State of New York, confined as they are to the single cause of adultery are outmoded and archaic. They promote all manner of sordid arrangements both in and out of the State. They promote perjurious testimony. Hence, they foster disrespect for the law which the courts are powerless to halt. The continued disclosure of evidence of adultery procured in violation of fundamental civil liberties thus works a double harm upon the integrity of the judicial process. (Elkins v. United States, supra, p. 222.)
The motion to suppress is, therefore, granted to the extent of excluding all evidence of the events occurring within the apartment on the morning of August 20, 1961, following such entry.