## BURKIS et al. v. UNITED STATES.
### No. 4796.

Circuit Court of Appeals, Third Circuit.

Aug. 1, 1932.

Frederic M. P. Pearse, of Newark, N. J., for appellants.

Phillip Forman, U. S. Atty., and John W. Griggs, Asst. U. S. Atty., both of Trenton, N. J.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge.

This is an appeal from a judgment of conviction. On the night of October 18, 1920, Lieutenant Keaton, a member of the New Jersey State Police, was patrolling the state highway, known as the Brunswick Pike, leading from New York to Philadelphia. When in the vicinity of West Windsor township, in Mercer county, N. J., he came upon a truck going toward Trenton and Philadelphia. The truck was loaded and there was an electric light inside of it and the officer at first thought that there was a fire in the truck. After following it for some time, he passed it, and being in civilian clothes, he ordered two state troopers, whom he met, to stop the truck. They did so and asked Burkis, the driver, for his driver's license and the registration cards for the truck. He did not have them. Lieutenant Keaton walked to the rear of the truck, opened the door, and found that it was loaded with intoxicating liquor, 291 cases.

The truck, containing the liquor, and the defendants were then taken to the Penns Neck State Police Headquarters. The defendants could have been delivered by the state police to either the state or federal authorities for prosecution, but they turned them over to the prohibition department. They were indicted, tried without a jury, and convicted. They appealed to this court and contend that the judgment should be reversed for two reasons:

1. The search and seizure violated the Fourth Amendment to the Constitution of the United States in that:

(1) They were made for the sole purpose of aiding the federal prosecution, and this being so,

(2) The search was not based upon probable cause and was unreasonable.

2. The evidence was not sufficient to support a verdict against Starr.

 The District Judge found that the search and seizure were not made solely in aid of a federal prosecution. The possession and transportation of intoxicating liquor is a violation of the National Prohibition Act and also the Hobart Act of the State of New Jersey, which provides that: "When any officer shall know or have reasonable ground to believe that any person, in violation of the law, is in the act of transporting, or is about to transport, intoxicating liquors in any vehicle, it shall be his duty to examine such vehicle and to seize any and all such intoxicating liquors found therein. Whenever intoxicating liquors so found shall be seized by any officer, he shall take possession of the vehicle and shall arrest any person in charge thereof. Such officer shall at once proceed against the person arrested under the provisions of this act in any court having competent jurisdiction." Vol. 1, p. 1626, Cum. Supp. Compiled Statutes of New Jersey, 1911–24, § 100—296.

That the defendants committed a crime against the state of New Jersey as well as against the federal government distinguishes this case from the case of Gambino v. United States, 275 U. S. 310, 48 S. Ct. 137, 72 L. Ed. 293, 52 A. L. R. 1381, upon which the defendants principally rely. When Gambino was arrested, the Mullin-Gage Act, the Prohibition Act of New York, had been repealed and in addition the Governor of New York had directed the State Police to aid in enforcing the National Prohibition Act with as much vigor as they would enforce any state law. The New York State Police had formerly been used as enforcement agents of the liquor law and had been stationed at the Canadian border to prevent the importation of intoxicating liquor. Consequently when the New York State Police arrested Gambino, it could not have been to enforce any state liquor law, for there was none, and the only reasonable and logical conclusion to be drawn from the evidence is that the State Police were acting solely for the federal government and so were held to the same standard of conduct as are federal officers under similar circumstances.

But the facts were different in the case at bar. Here the troopers were patrolling the highway in the performance of their regular duties. The burning light in the truck seemed unusual. The truck was accordingly stopped, and in the investigation that followed, the liquor was discovered as a mere incident thereof. When the defendants with the truck and liquor were turned over to the prohibition agents, the government accepted or adopted the search and seizure of the state officers. This it could do, for, if it be assumed that the search and seizure were illegal, the evidence was nevertheless properly received, since evidence wrongly secured by state officers is admissible in prosecutions for federal crimes. Weeks v. United States, 232 U. S. 383, 34 S. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177; Bur-

deau v. McDowell, 256 U. S. 465, 41 S. Ct. 574, 65 L. Ed. 1048, 13 A. L. R. 1159; Dodge v. United States, 272 U. S. 530, 47 S. Ct. 191, 71 L. Ed. 392. Judge Woolley, speaking for this court in the case of Miller v. United States, 50 F.(2d) 505, 507, in passing upon this identical question, said: "True, the government accepted the benefits of the alleged unlawful search and seizure by accepting the truck and its contents when the troopers delivered them at the government warehouse, and by using in evidence the property seized, as it could lawfully do unless the state troopers were acting on its behalf. On this point, the state troopers testified that they thought they were enforcing the National Prohibition Law (27 USCA). But this was merely their personal opinion, which alone cannot give a federal character to their action, particularly in view of the fact that Pennsylvania has a state liquor law of its own to be enforced and that the State Constabulary ordered the troopers to this task without any instructions to enforce the federal law." Consequently we do not think that the first question can be sustained under the facts of this case.

In the second question, Starr was riding on the truck sitting beside the driver. He testified that he was a mere "hitch hiker," and had nothing whatever to do with the crime; that he had been looking for work and was on his way home to Trenton where he had lived for fifteen years; that he boarded the truck when it stopped at a light near New Brunswick; and that he did not know what was in the truck and had never seen Burkis before. All of this was susceptible of proof. The trial was held in Trenton, where he said he had lived for fifteen years. He says that he is married. He could have shown when he left home, where he had been, where he had worked, etc., but no one, not even Burkis, was called by him to corroborate his testimony in any particular.

It appears that Starr did not tell this story of his innocence on the night of the arrest, nor until the trial. The trial judge said that "his belated and uncorroborated account is discredited and insufficient to raise reasonable doubt that he was associated in the guilty enterprise." The presence of Starr beside the driver in the seat, his failure to declare his innocence when arrested, and his failure to produce any corroborating testimony are enough to sustain the judgment, if his own testimony was disbelieved as it evidently was.

It follows that the judgment must be affirmed.