26 C.C.P.A. (Patents)

## STANSBURY v. MEYER et al.
### Patent Appeal No. 4148.

Court of Customs and Patent Appeals. June 26, 1939.

Frank H. Hubbard, of Milwaukee, Wis. (J. E. Hutchinson, Jr., of Washington, D. C., and William C. Lyon, of Milwaukee, Wis., of counsel), for appellant.

Clifton V. Edwards, of New York City, and John B. Brady, of Washington, D. C., for appellees.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an interference proceeding declared in the United States Patent Office between a patent, No. 2,002,281, issued to appellant May 21, 1935, on an application filed May 24, 1930, and a joint application of appellees filed January 17, 1928. Two counts, defining an electronic current regulator, are involved. They read:

"1. In combination, an alternating current supply, a circuit supplied thereby, and electron tube continuously regulating the effective current of said circuit and having a control electrode, and a regulable asymmetrically conducting energy storage circuit connected to said supply and to said control electrode.

"2. In combination, an alternating current supply, a circuit to be supplied thereby, an electron tube continuously regulating the effective current of said circuit and

having a control electrode, a regulable asymmetrically conducting energy storage circuit connected to said control electrode and means to supply a charging current to said storage circuit during alternate half cycles of the alternating current."

The counts originated in the patent, being copied into the application along with fourteen others on June 11, 1935, and the interference was declared as to all the counts so copied. Appellant was placed under order to show cause why judgment upon the record should not be entered against him and responded with a motion to dissolve, alleging, among other things, that the application of appellees failed to disclose the subject matter of the counts. The Primary Examiner sustained the motion and an interlocutory appeal was taken by Meyer and Spanner to the Board of Appeals, which affirmed the decision of the examiner as to fourteen counts, but reversed as to the counts (then numbered 8 and 9, corresponding to claims 7 and 8 of the patent) here involved. The Examiner of Interferences then entered judgment pro forma as to the two counts remaining in the case which were renumbered 1 and 2, respectively, awarding priority thereon to appellees. Stansbury appealed to the board and the board affirmed the judgment entered by the Examiner of Interferences. Stansbury filed two successive petitions for rehearing, both of which the board denied, and the instant appeal to this court followed.

In the brief on behalf of appellant it is said: " * * * the question of priority here presented narrows down to the question of support of the counts by appellees' application."

The situation confronting the court is one in which there was disagreement between the Primary Examiner and the Board of Appeals concerning a matter technical in character. As has been stated, there was agreement between those tribunals respecting fourteen counts. We deduce from their respective opinions that all of the counts as to which they agreed required what is described as "transient" voltage, that is, that the voltage impressed on the electrode be *transient* as distinguished from a *steady* voltage, and they held that appellees failed to disclose means for transient voltage. Both tribunals agreed, however, as to the involved counts, that they, as expressed by the examiner, "do not call for application of transient potentials on the control electrode."

In the final analysis there seems to be only one point of difference between the Patent Office tribunals respecting the involved counts, and that relates to the construction of the limitation applying to the electron tube, expressed in the clause (appearing in both counts) "continuously regulating the effective current of said [load] circuit." This limitation apparently was expressed in some of the counts not at issue here, probably in somewhat different phraseology, and was referred to by the examiner at different places in his decision. His statement made concerning it in connection with the involved counts reads: "It has not been demonstrated, nor does the Meyer et al. application disclose, that the control electrodes therein illustrated and described effect current regulation, let alone regulation of the *effective* current."

Discussing this point in its decision rendered on the interlocutory appeal, the Board of Appeals, referring to the application of appellees, said: "Obviously, the electron tube RT continuously regulates the effect of the current and has a control electrode * * *."

The same point was again discussed by the board in its decision rendered on the appeal from the Examiner of Interferences, awarding priority, where it was said: "We believe the tube RT of the Meyer and Spanner application obviously regulates to some extent at least the effective current of said circuit as stated in count 1. The appellees adjust their arrangement to produce a constant predetermined effect and this is properly regulation. The word regulate is given a broad definition in the dictionary and as there defined it refers properly to the adjustment described by Meyer and Spanner."

The matter was again alluded to in the board's statement accompanying its denial of appellant's first petition for reconsideration when it was said:

"Appellant points out that Meyer and Spanner do not definitely assert in their application the regulation of the effective current even 'to some extent at least' and he apparently objects to the interpretation of the meaning of the word 'regulate' by means of the dictionary. It is insisted that the regulation referred to in the counts is a regulation as 'a function of the energy stored in the energy storing means.'

"As indicated in our decision, Meyer and Spanner show the apparatus of the

counts and we have clearly indicated, we believe, why we consider the subject matter of the counts disclosed by Meyer and Spanner."

The arguments of appellant respecting this, the only material point upon which the tribunals of the Patent Office disagreed, have been carefully considered in the light of the illustrative matter furnished and commented upon in the briefs. We see no reason for disagreement with the board's construction of the limitation.

Another matter raised in the brief for appellant relates to the feature of regulable energy storage. The tribunals of the Patent Office were in agreement that this feature was disclosed by appellees and both gave specific attention to it. The statement of the examiner is: "It appears from a study of Fig. 2 of the Meyer et al. disclosure that, since $R_1$ should properly be considered a part of the 'energy storage circuit', this circuit is 'regulable', in the sense of adjustable, by presence of the adjustable resistor $R_1$. Insofar as $R_1$ is adjustable, it is analogous to resistors 7 and 27 employed in the Stansbury patent."

Since the matter here discussed (aside from the construction of the counts) involves only technical factual questions in which there is no present public interest of any peculiar character, and since they are well understood by the parties litigant, it is not deemed of importance to reproduce illustrations, nor is it regarded necessary further to analyze the arguments made.

Upon the material points we agree with the decision of the Board of Appeals and the same is affirmed.

Affirmed.