## UNITED STATES v. COTTER.
### Cr. No. 9673.

United States District Court
E. D. Virginia, Norfolk Division.
Sept. 23, 1948.

George R. Humrickhouse, U. S. Atty., of Richmond, Va., and John P. Harper, Asst. U. S. Atty., of Norfolk, Va., for plaintiff.

Russell T. Bradford, of Norfolk, Va., for defendant.

BRYAN, District Judge.

Indicted for the felonious removal and concealment of 100 gallons of distilled spirits with intent to defraud the United States of its excise, 26 U.S.C.A. § 3321, the defendant seasonably moved to suppress all the evidence, including the spirits and the containers, as well as the relating testimony of the officers, on the ground that it had been obtained in violation of the Fourth Amendment of the Constitution of the United States. Counsel for the Government and for the defendant requested that the motion be heard as a part of the trial of the case on its merits, and thereupon the defendant was arraigned, pleaded not guilty and went to trial before the Court with a jury waived. The prosecution and the defense frankly stated that if the challenged evidence was admissible the defendant should be found guilty, but if not admitted the case was insufficient for a conviction.

At the trial the motion to suppress was urged to all the evidence and testimony adduced, the Court reserved decision on the motion, and the parties have now briefed the question.

The search, seizure and arrest were made by Perry Downing, an officer of the Alcoholic Beverage Control Board of the State

of Virginia charged with enforcement of the State liquor dispensing laws. Downing had theretofore from time to time operated with the Federal officers, and while he kept his "main files" in the State office, some papers and daily reports he also kept in the offices of the Federal Alcohol Tax Unit of Norfolk. On occasion previous to the instant arrest he had discussed with the Federal officers the reputed bootleggers in the Norfolk area, and with them he had listed the numbers of suspicious automobiles, including the defendant's. He was in the habit of riding with the Federal officers through this territory and had pointed out to them Quint Cotter and his place of residence. In fine, he and the Federal officers had generally worked together a co-operation not undesirable.

About 1 o'clock on the morning of January 9, 1948, Downing was sitting in his automobile with the Chief of Police of South Norfolk, on a public highway in Norfolk County, Virginia where he had gone at the instance of the Chief to assist in an investigation to be had at a later hour. On observing two automobiles approaching, he turned his car so that its lights would shine across the road and reveal the identity of the cars. One of them he recognized as the defendant's car and the defendant its driver.

Nothing save Cotter's reputation as a bootlegger gave rise to any suspicion or cause to believe he was then violating any law, State or Federal. Nevertheless, Downing immediately pursued the Cotter car and the latter fled. The officer sounded his siren to call upon Cotter to stop, but the chase continued for four or five miles, passing through a village and across a railroad track, with the cars reaching a speed of 90 miles per hour. Cotter attempted to elude his pursuer by forcing him off the road as well as by sudden application of his brakes to cause a rear-end collision.

During the chase the Chief of Police fired his pistol at the rear tires of the Cotter car with apparent success, for the defendant's car developed a flat tire, turned abruptly to the left, went up in the air and rolled over on its side. Cotter jumped from the car and was forthwith apprehended, bleeding from the head and soaked with corn whiskey.

In the wrecked automobile were found twelve (12) bags containing several broken 5-gallon jugs and eight 5-gallon jugs full of untaxed whiskey, Cotter admitting that he had 100 gallons aboard.

Officer Downing immediately took Cotter to Norfolk for medical attention, refused the request of the defendant to be turned over to the State authorities, but instead called only the Federal officers and surrendered Cotter to them, some time after 1 o'clock in the morning. One of the Federal officers went with Downing to the wrecked car. Subsequently it was brought to Norfolk at the direction of the Federal authorities, stored as a Federal seizure and later confiscated by the United States through the Alcohol Tax Unit. This prosecution followed.

Downing denies that the arrest of Cotter was pursuant to pre-arrangement with the Federal officers. He explains that he had the Federal officers adopt the case because he knew it was a Federal violation and that Cotter had a Federal record. It is doubtful, he says, that the Federal officers even knew he was working that night.

That the officers had no warrant of any kind, and that the transportation of the whiskey was a violation also of the State laws, is a concessum in this case.

The defendant concedes too that the Fourth Amendment does not apply to State officers generally, but he urges its application here on the grounds, first, that the officer was acting in tacit concert with the Federal officers, and, secondly, that from the beginning and throughout he was himself enforcing a Federal law, if not cooperating with the Federal authorities. Byars v. U. S., 273 U.S. 28, 47 S.Ct. 248, 71 L.Ed. 520; Gambino v. U. S., 275 U.S. 310, 48 S.Ct. 137, 72 L.Ed. 293, 52 A.L.R. 1381.

■ The Court is of the opinion that the evidence sustains both of these factual contentions of the defendant, and that therefore under Sutherland v. U. S., 4 Cir., 92 F.2d 305, the acts of Officer Downing were subject to the sanctions of the Fourth Amendment. Kitt v. U. S., 4 Cir., 132 F.2d

920, is not precedent under the instant facts. The evidence clearly reveals that undoubtedly the arrest and seizure by Downing, whether collaborative or independent, constituted an effort to enforce the Federal laws, and therefore his actions must be appraised in the light of the Amendment providing: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

 It now remains to be determined whether there has been any violation of that Constitutional safeguard. The search here was not of a dwelling-house, but of an automobile, a means of rapid transportation. As to vehicles a search warrant is not required under the Fourth Amendment, because the impracticability of its timely procurement, as against a readily movable conveyance, renders a search warrant an unavailing, and therefore unnecessary, process. Carroll v. U. S., 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790, but see criticism in United States v. Di Re, 332 U.S. 581, 584, '68 S.Ct. 222. In this aspect our case differs from Sutherland v. U. S., supra.

Although a search warrant was not indispensable to the legality of the seizure by Officer Downing, reasonable or probable cause for the search was still demanded by the Amendment. As said by the late Chief Justice Taft in the Carroll case [267 U.S. 132, 45 S.Ct. 286]: " * * * The measure of legality of such a seizure is, therefore, that the seizing officer shall have reasonable or probable cause for believing that the automobile which he stops and seizes has contraband liquor therein which is being illegally transported."

It now held that whether an arrest without a warrant is valid should be judged by "the law of the state" where the arrest occurs. We have no doubt that the law of Virginia is that neither an arrest nor a seizure is valid unless it is on reasonable or probable cause, notwithstanding her rule of evidence ad-

mitting the proof on behalf of the State despite the officer's unlawful actions in its seizure. McClannan v. Chaplain, 136 Va. 1, 116 S.E. 495; Hall v. Com., 138 Va. 727, 121 S.E. 154.

Of probable or reasonable cause, the Court finds none. Admittedly there was no indication visible or otherwise sensible to the officer of the presence of contraband in the automobile—certainly less than in United States v. Costner, 6 Cir., 153 F.2d 23 wherein the seizure was quashed. Furthermore, he was not in possession of information or even warning that Cotter was removing or was about to remove untaxed ardent spirits. Nor was the officer on the lookout for Cotter for a known and unpunished violation of law. True, Cotter had the reputation of a bootlegger. But a reputation without more is not reasonable or probable cause for search and seizure, unless it is to be held that a citizen who has once violated the law shall thereafter be forever without the protection of the Fourth Amendment, and this the Court is not willing to hold.

The Court will pass a judgment of acquittal.