[Civ. No. 4094. Fourth Dist. Apr. 3, 1951.]

MARION TOMBLINSON, Respondent, v. JOHN NOBILE et al., Appellants.

Crossland & Crossland, Ray W. Hays and James N. Hays for Appellants.

Nicholas H. Dubsick and Marvin E. Helon for Respondent.

MUSSELL, J.—Plaintiff received serious injury to his right eye from a blow struck by defendant John Nobile with a "blackjack" (a leather bag full of shot). He recovered damages therefor against defendant Nobile and his employer Frank Stielow, individually and doing business as "Frank's Detective Service." These defendants appeal from the judgment and submit as reasons for reversal that (1) The evidence does not support the verdict and judgment; (2) The jury was erroneously instructed; and (3) Plaintiff committed prejudicial error in the *voir dire* examination of jurors.

The evidence is here briefly summarized and stated in accordance with the rules that it must be construed most strongly against the party against whom the judgment is rendered; that every favorable inference which may fairly be deduced from the evidence should be resolved in favor of the prevailing party and that the prevailing party's evidence must ordi-

narily be accepted as true and the evidence which contradicts it must be disregarded. (*Roy* v. *Mission Taxi Co.,* (*Cal.App.) 219 P.2d 840.)

### Evidence

█ Plaintiff and two male companions, during the evening of February 5, 1949, visited "Johnny's Place," a combination restaurant, bar and dance hall in Fresno. They secured a table near the dance floor and while plaintiff was sitting at the table drinking beer, Robert Welch (one of his companions) became somewhat hilarious and noisy. Defendant Nobile, who was employed by Frank's Detective Service and instructed to watch plaintiff's table by one of the proprietors of the café, approached Welch, told him he was creating too much disturbance and that he would have to leave. Nobile accompanied Welch to the door. Plaintiff got up from the table and followed. When he was outside, he asked Nobile why they were throwing Welch out. Nobile replied that Welch was making too much noise and he had to leave. Plaintiff then stated that he was going back inside and see "Cecil" (one of the proprietors of the café) and see if he could get Welch back in, if he would be quiet. As plaintiff started through the door, Nobile "grabbed him by the hair" and pulled him back.

One witness, Eugene O'Neal testified as follows: "He pulled Marion (plaintiff) back, threw him off balance, and I don't know whether he swung a blow or not, but it looked like it to me. The cop swung a blow and Marion came up fighting. He hit the cop and backed away. He hit him and knocked the cop down and Marion commenced to backing up, and both cops started circling him." In this connection plaintiff testified that after stating that he was going back inside to see "Cecil," he "turned around, went back toward the crowd, which had already gathered there, started in the door, and somebody grabbed me and pulled me; they had ahold of my hair and ahold of my shoulder. I don't know who it was. I just turned around and more or less shook or hit whoever it was to keep them off of me. . . ." He further testified as follows: "After I hit the officer, I hit him in the face some place, I don't know where, I backed into the crowd. When I did that somebody grabbed me ahold of my arms and I was trying to get loose from who had ahold of me.

*A rehearing was granted on July 26, 1950, and the final opinion of the District Court of Appeal is reported in 101 Cal.App.2d 438.

I don't know who it was and as I was shaking my head and wiggling my body . . . I saw a fist and a club or blackjack coming down, and it hit me in the face. I fell to the ground—rolled over on my face—and somebody either kicked me or stepped on me, on my back, and the officers picked me up."

Another witness, Joyce O'Neal, testified that she accompanied her husband to the door and heard the "officer" call the plaintiff a vile name and saw the "officer" pull plaintiff back and hit him in the face.

According to the testimony of defendant Nobile, plaintiff, in the presence of the crowd which had gathered in the door of the café, used profane language and was told that he was under arrest; that he then took "ahold" of plaintiff's left arm and he jerked it away; that he "grabbed" plaintiff the second time and told him he was under arrest and that then the plaintiff struck him with his right hand, knocking him back against the car, where he went down; that as he was coming up off the ground, he swung his blackjack and struck plaintiff, who then fell to the ground; that he placed plaintiff under arrest because of the language he was using; that he struck the plaintiff because he (Nobile) thought he was about to be assaulted again.

There was a sharp conflict in the evidence as to whether plaintiff did use profane language and as to whether the defendant Nobile informed plaintiff that he was under arrest. The foregoing evidence is ample to support the verdict and judgment.

█ The contention that the court erroneously instructed the jury is without merit. At the request of the plaintiff, the jury was instructed in the following language:

"You are instructed that the defendant John Nobile is not a peace officer but is a private detective operating under the provisions of Division 3, Chapter 11 of the Business and Professions Code, and that said John Nobile has the same authority and no more authority to make arrests and preserve the peace than any other private citizen."

And a further instruction, as follows:

"Mere words however threatening or profane will not amount to an assault."

It is defendants' contention that by the first of these instructions the court erroneously limited Nobile's authority to that of a private citizen. However, as stated in the instruction, Nobile was not a peace officer as defined by Penal Code section 817 and the definition of a peace officer under

that section was given in the instruction immediately preceding the one complained of and at the request of the defendants. The jury was instructed as follows:

"You are instructed that any person, be he a police officer or private citizen, may arrest another for the commission of a misdemeanor in his presence. In this connection, if you find that the plaintiff, Marion Tomblinson, committed either a felony or a misdemeanor in the presence of the defendant, John Nobile, that the defendant, John Nobile, had the right to arrest the plaintiff, Marion Tomblinson, for the commission of such felony or misdemeanor."

The jury was further instructed fully as to the rights of defendant Nobile to repel force by force in the defense of his person under the circumstances here shown. It is true that Nobile had the right to eject trespassers from the premises involved, if the circumstances warranted such action. However, he had authority to use only such force as was reasonably necessary and the brutal use of a "blackjack" was clearly without justification. (*Haworth* v. *Elliott,* 67 Cal.App.2d 77, 82 [153 P.2d 804].)

The instructions properly covered the authority of the defendant John Nobile in making an arrest, whether he was a peace officer or not. The second instruction is a correct statement of the law and while its application to the facts presented may be somewhat obscure, no prejudicial error was occasioned by it or by the first instruction. Especially is this true when defendant Nobile himself testified that he struck the plaintiff to prevent a further assault upon himself and the apparent fact that the injury to plaintiff was not incurred while he was being ejected from the premises.

Finally, it is argued that prejudicial error was committed in the *voir dire* examination in the asking of some of the prospective jurors whether or not they or their friends had any interest in any insurance company. The question was proper if asked in good faith. (*Kroplin* v. *Huston,* 79 Cal.App.2d 332, 336 [179 P.2d 575].)

As was said in *Levens* v. *Stocco,* 5 Cal.App.2d 693, 695 [43 P.2d 357]:

"It is the rule that prospective jurors may be asked if they are interested in a specified casualty company, or generally in any insurance company, if the question be propounded in good faith."

Under the circumstances here presented, we conclude that there was no showing of bad faith and that the questions

asked the prospective jurors were not prejudicially erroneous, where, as here, there was no contention that the judgment awarded was excessive and the liability was established by abundant evidence.

Judgment affirmed.

Barnard, P. J., and Griffin, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 28, 1951.