[L.A. No. 29590. In Bank. Dec. 26, 1968.]

CHARLES G. STAPLETON, Petitioner, v. THE SUPE-
RIOR COURT OF LOS ANGELES COUNTY, Respond-
ent; THE PEOPLE, Real Party in Interest.

Robert R. Lee and Brent, Lee & Frank for Petitioner.

No appearance for Respondent.

Evelle J. Younger, District Attorney, Harry Wood and Robert J. Lord, Deputy District Attorneys, for Real Party in Interest.

TOBRINER, J.—Petitioner seeks a writ of prohibition to compel the Superior Court of Los Angeles County to grant his motion pursuant to section 1538.5 of the Penal Code to suppress certain evidence seized from his automobile. The People contend that a private citizen conducted the search and the search therefore does not fall within the purview of the Fourth Amendment. Because of police involvement in the search we have concluded that petitioner's motion to suppress the evidence should have been granted.

On the night of November 23, 1967, Lee Bradford, a special agent for the Carte Blanche credit card corporation, together with agents from two other credit card corporations, went to

the Highland Park police station in Los Angeles to aid in the arrest of petitioner, for whom the police had an outstanding arrest warrant for credit card fraud. The agents and the police agreed to meet near petitioner's home. After arriving at petitioner's home around midnight, the officers instructed Bradford and another agent to cover the rear of the house to prevent an escape while the two officers and the third agent went to the front door with the warrant. Bradford testified that he was armed at the time.

Bradford further testified to the following effect. Bradford entered petitioner's house after one of the officers requested him to do so and let him in through the back door. Bradford and the officers arrested and handcuffed defendant. Bradford then started searching the house; the officers were also engaged in searching the premises and Bradford assisted them. He shortly asked whether anyone had searched petitioner's car which, he remembered, he had seen parked some distance down the street. Bradford could not recall who had answered his question negatively. Bradford then asked where the keys were and someone indicated the keys lying on a table. Another agent handed the keys to Bradford, who then went outside to the car. In response to the question why he went out to the car, Bradford answered: "Well, it's one of those things that we have done in making arrests, searching incidental to the arrest." He also stated that he was looking for credit cards or merchandise which may have been purchased with cards, and admitted that he had no search warrant and that the petitioner had not given permission for the search.

Bradford searched inside the car, which was not locked, and then unlocked the trunk. In the trunk he discovered 60 canisters containing a tear gas-like substance. In order not to disturb the "evidence," Bradford closed the trunk and reported his discovery to the officers. One of the officers returned to the car with Bradford, opened the trunk, and retrieved the canisters.[1]

Petitioner was subsequently charged with possessing a "shell, cartridge, or bomb containing or capable of emitting tear gas" in violation of Penal Code section 12420. Petitioner moved to suppress the canisters under section 1538.5 of the

---

[1]Because of the police involvement in Bradford's *search* we need not decide whether, following Bradford's disclosure that tear gas canisters were in the trunk of petitioner's car, the police should have obtained a search warrant before the *seizure* of the canisters. (Compare *People* v. *Fierro* (1965) 236 Cal.App.2d 344 [46 Cal.Rptr. 132.)

Penal Code, and, following a hearing pursuant to that section, the motion was denied. This petition for a writ of prohibition followed.

I

The Fourth Amendment's prohibition against unreasonable searches and seizures applies to the states, and evidence obtained in violation of that amendment is inadmissible in state courts. (*Mapp* v. *Ohio* (1961) 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684, 84 A.L.R.2d 933].) The Fourth Amendment does not apply, however, to searches by private individuals (*Burdeau* v. *McDowell* (1921) 256 U.S. 465 [65 L.Ed. 1048, 41 S.Ct. 574, 13 A.L.R. 1159].)[2]

The search of petitioner's car was clearly part of a joint operation by police and the credit card agents aimed at arresting petitioner and obtaining evidence against him. This official participation in the planning and implementation of the overall operation is sufficient without more to taint with state action the subsequent acts of such credit card agents.[3]

---

[2]For Comment with respect to *Burdeau* v. *McDowell, supra,* 256 U.S. 465, compare *People* v. *Botts* (1967) 250 Cal.App.2d 478, 482 [58 Cal. Rptr. 412]; *Del Presto* v. *Del Presto* (1966) 92 N.J.Super. 305 [223 A.2d 217]; *Sackler* v. *Sackler* (1962) 33 Misc.2d 600 [224 N.Y.S.2d 790, 793], revd. 16 App.Div.2d 423 [229 N.Y.S.2d 61, 67-70] (see dissents of Christ, J., and Hopkins, J.), affd. (1964) 255 N.Y.S.2d 83, 86 (see dissent of Van Voorhis, J.); *Williams* v. *United States* (6th Cir. 1960) 282 F.2d 940, 941; see *Casey* v. *United States* (1928) 276 U.S. 413, 423 [72 L.Ed. 632, 636, 48 S.Ct. 373] (Brandeis, J., dissenting); *Seizures by Private Parties: Exclusion in Criminal Cases* (1967) 19 Stan.L.Rev. 608; *A Comment on the Exclusion of Evidence Wrongfully Obtained by Private Individuals* (1966) Utah L.Rev. 271; Note (1964) 12 U.C.L.A. L.Rev. 232; Note (1963) 48 Cornell L.Q. 345; Note (1963) 63 Colum. L.Rev. 168; Note (1962) 8 Utah L.Rev. 84; Comment (1961) 35 So.Cal. L.Rev. 64, 85; M. Forkosch, Constitutional Law (1963) p. 308, fn. 87; with *People* v. *Randazzo* (1963) 220 Cal.App.2d 768, 770 [34 Cal.Rptr. 65]; *United States* v. *McGuire* (2d Cir. 1967) 381 F.2d 306, 312-314, fn. 5. The decision which led to the Fourth Amendment, *Entick* v. *Carrington* (1765) 19 State Trials 1030, 1066, enunciates a rather Hobbesian absolute right of privacy against all intruders, official and private, not merely a Jeffersonian ideal of limited government. (Compare Comment (1963) 72 Yale L.J. 1062, 1069.) We express no opinion as to the impact of these cases and commentaries on *Burdeau,* or as to their application to the proper interpretation of article I, section 19 of the California Constitution.

[3]We are not called upon to decide whether searches by private investigators and private police forces should be held subject per se to the commands of the Fourth Amendment on the ground that one of their basic purposes is the enforcement of the law. (See *Seizures by Private Parties: Exclusion in Criminal Cases, supra,* 19 Stan.L.Rev. 608, 614; Note, *supra,* 12 U.C.L.A.L.Rev. 232, 235.) Searches by such well financed and highly trained organizations involve a particularly serious threat to privacy. California statutes, moreover, blur the line between public and private law enforcement. (See, e.g., Pen. Code, § 12027, subds. (a) and (e) (carrying of concealed weapons, although generally forbidden, per-

In *Byars* v. *United States* (1927) 273 U.S. 28 [71 L.Ed. 520, 47 S.Ct. 248], city police, then not subject to the Fourth Amendment, obtained a warrant—invalid by constitutional standards—to search the defendant's home for intoxicating liquors. After obtaining the warrant, but before commencing the search, Police Officer Densmore asked a federal prohibition agent, Mr. Adams, to join the group making the search. Upon reaching the defendant's home Densmore assigned each member of the party to search a particular room of the house. Both Adams and a police officer named Taylor found counterfeit whiskey stamps. Although Adams had not initiated the search and had not directed the actions of Taylor or any other police officers, the Supreme Court excluded the stamps, including those found by Taylor. Justice Sutherland, speaking for the court, noted that Adams participated under the color of his federal office, and thus rendered the search in substance a ''joint operation'' of local and federal authorities, and concluded that the legal significance of such a search was ''the same as though he [Adams] had engaged in the undertaking as one exclusively his own.'' (*Byars* v. *United States, supra,* 273 U.S. 28, 33 [71 L.Ed. 520, 523].)

█ *United States* v. *Price* (1966) 383 U.S. 787, 794 [16 L.Ed.2d 267, 272, 86 S.Ct. 1152], illustrates the minimal extent of official participation needed to bring such group action within the purview of the Constitution. In *Price* the court held that the alleged murder of two civil rights workers by 18 men, including three Mississippi policemen, constituted ''state action'' (which the court equated with action ''under color of law'') in violation of 18 U.S.C. section 242. ''Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law . . . . To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint

---

mitted to guards, messengers, and persons assisting police officers); Bus. & Prof. Code, § 7500 et seq. (regulating private investigators); Bus. & Prof. Code, § 7538, subd. (a) (all information obtained by private investigator cannot be disclosed without permission of client, except that it can be disclosed without such permission to the police or district attorney); Lab. Code, § 3366 (a person actively assisting police at their request is deemed a public employee and can obtain compensation for injuries sustained while rendering that assistance); Pen. Code, § 837 (citizen's arrest).) For instances of citizen's arrests involving private police see, e.g., *Abbott* v. *Cooper* (1933) 218 Cal. 425 [23 P.2d 1027]; *People* v. *Denby* (1895) 108 Cal. 54 [40 P. 1051]; *Tomblinson* v. *Nobile* (1951) 103 Cal.App.2d 266 [229 P.2d 97]; *People* v. *Dawson* (1948) 88 Cal.App.2d 85 [198 P.2d 338]; *Mackie* v. *Ambassador Hotel etc. Corp.* (1932) 123 Cal.App. 215 [11 P.2d 3].)

activity with the State or its agents." (See also *Burton* v. *Wilmington Parking Authority* (1961) 365 U.S. 715, 725 [6 L.Ed. 2d 45, 52, 81 S.Ct. 856] (restaurant located in a state-owned building part of a joint economic enterprise and thus subject to the Fourteenth Amendment); *Weeks* v. *United States* (1914) 232 U.S. 383, 398 [58 L.Ed. 652, 657, 34 S.Ct. 341, L.R.A. 1915B 834] (evidence barred which was taken from the house of the accused by a federal official acting "under color of his office.").)

The well-coordinated joint operation conducted in the instant case by the police and the agents clearly falls under the rule laid down in *Byars* and *Price*. Bradford joined the operation and entered petitioner's house at the request and as an agent of the police. The agency did not end nor Bradford revert to private status when as part of that operation, although without a specific instruction from the police, Bradford searched petitioner's car. (See *People* v. *Fierro, supra,* 236 Cal.App.2d 344, 347; compare *People* v. *Moran* (1958) 166 Cal.App.2d 410, 415 [333 P.2d 243].) Accordingly, even though police officers did not direct Bradford to search the car, just as Adams had not directed Taylor to search the defendant's house in *Byars,* the evidence discovered by Bradford during that joint operation is inadmissible.

## II

The instant case also resembles that dealt with in *Moody* v. *United States* (D.C.Mun.App. 1960) 163 A.2d 337. In *Moody* a Willie Johnson, after a series of thefts from his apartment, recognized some of the stolen goods in the apartment of defendant Moody. Johnson chased Moody into the street and held him until police arrived. Following Moody's arrest Johnson and a police officer returned to Moody's apartment. Johnson entered the apartment and handed the stolen articles to the police officer who remained in the hallway.

The court noted, "[t]here was no indication in the record that the officer did anything to induce Johnson's actions or that he made any effort to deter him." (*Moody* v. *United States, supra,* 163 A.2d 337, 339.) Applying the silver platter standards laid down by *Lustig* v. *United States* (1949) 338 U.S. 74, 79 [93 L.Ed. 1819, 1823, 69 S.Ct. 1372], the court concluded "that there was a participation by the arresting officer and that the complaining witness [Johnson] acted as an arm of the police in reducing the articles to possession. The construction to be attached to the Fourth Amendment . . .

may be violated just as effectively through the intervening agency of one not a policeman. While no objection can be raised to the propriety of the arresting officer's conduct in merely viewing the articles from the adjacent hallway, we cannot characterize him as a willing but innocent beneficiary in *standing silently by* while the appropriation was taking place.'' (Italics added.) (*Moody* v. *United States, supra,* 163 A.2d 337, 340.)

In the instant case the Highland Park police, by allowing Bradford to join in the search and arrest operation, put Bradford in a position which gave him access to the car keys and thus to the trunk of petitioner's car. Thereafter the police stood silently by while Bradford made the obviously illegal search. Contrary to the assumption of the respondent court, the police need not have requested or directed the search in order to be guilty of ''standing idly by''; knowledge of the illegal search coupled with a failure to protect the petitioner's rights against such a search suffices. Here police permitted action by Bradford which probably constituted both a misdemeanor (Veh. Code, § 10852, tampering with a vehicle or the contents thereof) and a trespass to petitioner's personal property. (Prosser on Torts (1964) § 14.) The circumstances closely parallel those in *Moody,* and the evidence thus obtained must be excluded.[4]

---

[4]We are thus not called upon to decide whether the Fourth Amendment should apply on the claimed ground that Bradford was searching for evidence. In *Gambino* v. *United States* (1927) 275 U.S. 310 [72 L.Ed. 293, 48 S.Ct. 137, 52 A.L.R. 1381], the Supreme Court applied the Fourth Amendment to a search by state troopers because the search was undertaken to assist in the enforcement of federal law, although without the cooperation of federal officials. *Gambino* relied on the notion that the federal use constituted a ratification of a search made ''on behalf of the United States.'' (275 U.S. at p. 317 [72 L.Ed. at p. 296]; see *Ter.* v. *Achuck* (1930) 31 Hawaii 474, 490; compare *Hays* v. *Deaton Truck Line* (1956) 264 Ala. 442, 446 [87 So.2d 825].) Searches and seizures to assist criminal prosecutions may be such an inherently governmental task as to fall under the rationale of *Marsh* v. *Alabama* (1946) 326 U.S. 501 [90 L.Ed. 265, 66 S.Ct. 276]. The application of the exclusionary rule to such ''private'' searches is more likely to deter unlawful searches than it would in other cases.

The court in *Gambino* indicated that a state officer acting to help enforce both state and federal laws would not be subject to the Fourth Amendment. Such a rule was necessary to preserve the vitality of the now defunct silver platter doctrine. (See *Weeks* v. *United States* (1914) 232 U.S. 383, 398 [58 L.Ed. 652, 657-658, 34 S.Ct. 341, L.R.A. 1915B 834]; *Lustig* v. *United States, supra,* 338 U.S. 73, 79 [93 L.Ed. 1819, 1823].) Enforcement of state law is the only additional motive ever accepted by courts applying *Gambino* as putting beyond the reach of the Fourth Amendment a search motivated in substantial part by a desire to enforce federal law. (See, e.g., *Rettich* v. *United States* (1st Cir. 1936) 84 F.2d 118, 122; *Gowling* v. *United States* (6th Cir. 1933) 64

## III

Neither the agent who searched the car nor the police officers possessed a search warrant.

In their petition for rehearing or modification the People urge for the first time that the search can be justified as reasonably incidental to petitioner's arrest. The People do not suggest that this matter should be decided by this court at this late date, but ask instead that it be heard by the superior court either on a renewal of the special hearing pursuant to Penal Code section 1538.5, subdivision (i), or at trial under Penal Code section 1538.5, subdivision (j). Section 1538.5, subdivision (j), provides in pertinent part: "If defendant's motion is granted at a special hearing in the superior court, the people, if they have *additional* evidence relating to the motion and *not presented* at the special hearing, shall have the right to show good cause at the trial why such evidence was not presented at the special hearing and why the prior ruling at the special hearing should not be binding. . . ." (Italics added.)

In view of the fact that petitioner consistently argued at each stage of the proceedings in this case that the search was not reasonably incidental to the arrest, a renewal of the special hearing would be inappropriate. Since we are ordering that the motion to suppress be granted, the People may raise this question at trial under the quoted portion of section 1538.5, subdivision (j), provided that, as they apparently claim, they have "additional evidence" concerning the rea-

---

F.2d 796, 799; *Burkis* v. *United States* (3d Cir. 1932) 60 F.2d 452, 453; *United States* v. *Long* (D.N.J. 1931) 52 F.2d 901, 902; *Sloane* v. *United States* (10th Cir. 1931) 47 F.2d 889, 890; *United States* v. *Walker* (D.Tenn. 1930) 41 F.2d 538, 540.) Such an additional motive would no longer save an otherwise illegal search. (*Elkins* v. *United States* (1960) 364 U.S. 206 [4 L.Ed.2d 1669, 80 S.Ct. 1437].) Although the court in *Gambino* indicated it was important that the state troopers had been motivated "solely" by a desire to enforce the federal statute, this point seems to have been intended to emphasize the absence of an additional intention to enforce state law. The Supreme Court did not suggest that it might matter that the state troopers had some other private motive for arresting the defendants in *Gambino*; courts applying *Gambino* have generally limited their inquiry to the existence of a relevant state statute which the state officials might have been enforcing. (See, e.g., *Miller* v. *United States* (3d Cir. 1931) 50 F.2d 505, 507; *United States* v. *Scotti* (S.D. Tex. 1950) 102 F.Supp. 747; *State* v. *Hiteshew* (1930) 42 Wyo. 147, 152 [292 P. 2].) Often courts applying *Gambino* omit altogether the term "solely." (See, e.g., *People* v. *Botts* (1967) 250 Cal.App.2d 478, 481 fn. 3 [58 Cal.Rptr. 412] ("the express purpose"); *Kitt* v. *United States* (4th Cir. 1942) 132 F.2d 920, 922 (search "really made" on behalf of United States); *United States* v. *Cotter* (E.D.Va. 1948) 80 F.Supp. 590, 591; *United States* v. *Jordan* (E.D.Pa. 1948) 79 F.Supp. 411, 412.)

sonableness of the search which is not contained in the record before us, and provided that they can show good cause why that evidence was not presented at the special hearing.

Although in seeking prohibition petitioner has mistaken his remedy, he has nevertheless made out a case entitling him to mandate. Accordingly, we treat the petition as one for mandate. (See *de Losa* v. *Superior Court* (1958) 166 Cal.App.2d 1, 2 [332 P.2d 390].)

Let a peremptory writ of mandate issue directing the respondent superior court to grant petitioner's motion to suppress the evidence consisting of the canisters found by Agent Bradford.

Traynor, C. J., Peters, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

McCOMB, J.—I dissent. I would deny the writ.

The petition of the real party in interest for a rehearing was denied February 19, 1969, and the opinion was modified to read as printed above.