MR. JUSTICE CASTLES,
Justice (dissenting):
I dissent.
I would squarely overrule State v. Brecht, 157 Mont. 264, 485 P.2d 47.
*506 In Brecht, defendant was charged with murder in the first degree. Sandra Brumfield, sister of the deceased, was allowed to testify to a telephone conversation between defendant and the deceased. Both Sandra and the deceased were, at that time, residing in the home of their mother. During the telephone conversation, Sandra picked up an extension telephone and listened to the conversation. She was allowed to testify at the trial that she heard the defendant tell the deceased, “I got my shotgun out of hock, I am coming down and I will use it if I have to.” This Court held that the admission of this testimony violated the defendant’s Fourth and Fourteenth Amendment rights and his rights under Article III, Sec. 7, of the 1889 Montana Constitution. In so holding, this Court stated at pages 270, 271, 485 P.2d at page 51, that the exclusionary rule applied to searches and seizures conducted by private individuals:
“The violation of the constitutional right to privacy and against compulsory self-incrimination is as detrimental to the person to whom the protection is guaranteed in the one case as in the other. To distinguish between classes of violators is tantamount to destruction of the right itself.
¡í# *
“This Court in the present case would be remiss were it not to recognize that evidence obtained by the unlawful or unreasonable invasion of several of the constitutionally protected rights guaranteed to its citizens by both the federal and Montana constitutions properly comes within the contemplation of this Court’s exclusionary rule. To do otherwise would lend Court approval to a fictional distinction between classes of citizens: those who are bound to respect the Constitution and those who are not. Were the exclusionary rule to recognize such distinctions it would by indirection circumvent the rule established by this Court to enforce these rights and would in fact render the rule and the constitutional guarantees it protects meaningless.”
Leaving aside for the moment issues relating to the Montana *507 Constitution, the plain and simple truth is that a seizure by a private individual does not violate the federal Constitution so long as that individual cannot be deemed an agent of the state because of his involvement with the police.
In the case of Burdeau v. McDowell, 256 U.S. 465, 475, 41 S.Ct. 574, 65 L.Ed. 1048 (1921), the defendant’s employer had entered defendant’s office, drilled his safe and broken the locks on his desk. A few months later, the employer turned papers found over to the government. In response to a motion asking for an order for the return of the books, papers, memoranda, correspondence, and other data in the possession of the Special Assistant to the Attorney General of the United States, the Court stated:
“The Fourth Amendment gives protection against unlawful searches and seizures, and as shown in the previous eases, its protection applies to governmental action. Its origin and history clearly show that it was intended as a restraint upon the activities of sovereign authority, and was not intended to be a limitation upon other than governmental agencies; as against such authority it was the purpose of the Fourth Amendment to secure the citizen in the right of unmolested occupation of his dwelling and the possession of his property, subject to the right of seizure by process duly issued.
“In the present case the record clearly shows that no official •of the federal government had anything to do with the wrongful seizure of the petitioner’s property, or any knowledge thereof until several months after the property had been taken from him and was in the possession of the Cities Service Company. It is manifest that there was no invasion of the security afforded by the Fourth Amendment against unreasonable search and seizure, as whatever wrong was done was the act of individuals in taking the property of another.”
Although the scope of the exclusionary rule has expanded immensely since the decision in Burdeau in 1921, that decision has not been deviated from by the courts of this country. The *508 United States Supreme Court in Wolf v. Colorado, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949), held that the Fourth Amendment’s search and seizure prohibitions were applicable to the states under the due process clause of the Fourteenth Amendment. Its decision in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), by holding that “all evidence obtained by searches and seizure in violation of the Constitution is, by that same authority, inadmissible in a state court”, made the exclusionary rule applicable to the states. However, in order to invoke the exclusionary rule on federal constitutional grounds there must have been, as a condition precedent, some violation of the federal constitution. Mapp, supra. A search and seizure by a private individual does not violate the-Fourth Amendment. Burdeau, supra. Likewise, as the Fourteenth Amendment is directed to the states and not to private-individuals, a search and seizure by a private individual does, not violate the Fourteenth Amendment. Coolidge v. New Hampshire, 403 U.S. 443, 487, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).. Thus, because a search and seizure by a private individual does not violate the federal constitution, it follows that the exclusionary rule is not mandated by the federal constitution.
Here, the events transpiring at the police station show there was no involvement by the police in this search and seizure nor was Hillis an instrumentality of the police. I cannot accept the proposition that a person becomes an instrumentality of' the police merely by reporting an incident to the police. On-the other hand, the police cannot use a person who reports, a crime as an unwitting tool of the police to achieve ends forbidden to the police themselves. Such is not the case here.. There is absolutely no evidence to indicate that the police consciously played dumb or refused to make the search and seizure-for the purpose of encouraging a search and seizure by a private individual.
The fact the police did not actively enter into the incident by prohibiting Hillis from making the search and seizure or by *509 obtaining a search warrant and making the search and seizure themselves should not result in Hillis being deemed an instrumentality of the police and suppression of the evidence. It is ■not the policy of this state to inhibit the reporting of crime to the police. One of the motives of Hillis throughout this inci•dent was to protect the reputation of McDonald’s by preventing bad publicity which might ensue if uniformed police were to make the search and seizure on the premises. The police knew “this. If the business community is aware that a report to the ■police must result in an immediate police response without regard for the consequences or its effect on its business’ goodwill, there is no doubt in our minds that the reporting of incidents to the police will be inhibited and lessened. Thus, I would decline to hold that Hillis was an instrumentality of “the police for purposes of the instant search and seizure.
Defendant contends the search and seizure of the substance "by Robert Hillis from defendant’s coat pocket violated Article II, Sections 10 and 11, of the 1972 Montana Constitution and ¡section 95-701, R.C.M.1947, and thus must be suppressed by reason of the exclusionary rule. Those sections read as follows:
“Section 10. Right of privacy. The right of individual privacy is essential to the well-being of a free society and shall ■not be infringed without the showing of a compelling state-interest.
“Section 11. Searches and seizures. The people shall be ¡secure in their persons, papers, homes and effects from unreasonable searches and seizures. No warrant to search any place, or seize any person or thing shall issue without describing the place to be searched or the person or thing to be seized, ■or without probable cause, supported by oath or affirmation reduced to writing.”
“95-701. Searches and seizures — when authorized. A search ■of a person, object or place may be made and instruments, articles or things may be seized in accordance with the provisions of this chapter when the search is made:
*510 “(a) As an incident to a lawful arrest.
“(b) With the consent of the accused or of any other person who is lawfully in possession of the object or place to be-searched, or who is believed upon reasonable cause to be im such lawful possession by the person making the search.
“(c) By the authority of a valid search warrant.
“(d) Under the authority and within the scope of a right of lawful inspection granted by law.”
Even if the search and seizure by Hillis was a violation of the foregoing provisions, the facts of this case do not warrant an application of the exclusionary rule.
In discussing the purpose of the exclusionary rule, the Supreme Court of the United States has recently stated in United States v. Calandra, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561, 571 (1974):
“The purpose of the exclusionary rule is not to redress the injury to the privacy of the search victim:
“ ‘[T]he ruptured privacy of the victims’ homes and efffects-. cannot be restored. Reparation comes too late.’ Linkletter v. Walker, 381 U.S. 618, 637, 85 S.Ct. 1731, 1742, 14 L.Ed.2d 601 (1965).
“Instead, the rule’s prime purpose is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable search and seizures:
“ ‘The rule is calculated to prevent, not to repair. Its purpose is to deter — to compel respect for the constitutional guaranty in the only effectively available way — by removing the incentive to disregard it.’ Elkins v. United States, 364 U.S. 206, 217, 80 S.Ct. 1437, 1444, 4 L.Ed.2d 1669 (1960).
“Accord, Mapp v. Ohio, 367 U.S. 643, 656, 81 S.Ct. 1684, 1692, 6 L.Ed.2d 1081, [84 A.L.R.2d 933] (1961); Tehan v. United States, ex rel. Shott, 382 U.S. 406, 416, 86 S.Ct. 459, 465, 15 L.Ed.2d 453 (1966); Terry v. Ohio, 392 U.S. 1, 29, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968). In sum, the rule is a judicially-created remedy designed to safeguard Fourth Amendment *511 rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved.
“Despite its broad deterrent purpose, the exclusionary rule has never been interpreted to proscribe the use of illegally-seized evidence in all proceedings or against all persons. As with any remedial device, the application o'f the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served.”
In declining to extend the exclusionary rule to the use in grand jury proceedings of evidence seized in violation of the Fourth Amendment, the Court in Calandra stated at page 350 of 414 U.S., at page 621 of 94 S.Ct., at page 573 of 38 L.Ed.2d:
“Against this potential damage to the role and functions of the grand jury, we must weigh the benefits to be derived from this proposed extension of the exclusionary rule. Suppression of the use of illegally-seized evidence against the search victim in a criminal trial is thought to be an important method of •effectuating the Fourth Amendment. But it does not follow that the Fourth Amendment requires adoption of every proposal that might deter police misconduct. In Alderman v. United States, 394 U.S., at 174, 89 S.Ct., at 967, [22 L.Ed.2d 176], for example, this Court declined to extend the exclusionary rule to one who was not the victim of the unlawful search:
“ ‘The deterrent values of preventing the incrimination of those whose rights the police have violated^ have'been considered sufficient to justify the suppression of probative evidence even though the case against the defendant is weakened or destroyed. We adhere to that judgment. But we are not convinced that the additional benefits of extending the exclusionary rule to other defendants would justify further encroachment upon the public interest in prosecuting those accused of crime and having them acquitted or convicted on the basis of all the evidence which exposes the truth.’
“We think this observation equally applicable in the present context.
*512 “Any incremental deterrent effect which might be achieved by extending the rule to grand jury proceedings is uncertain at best. Whatever deterrence of police misconduct may result from the exclusion of illegally-seized evidence from criminal trials, it is unrealistic to assume that application of the rule to grand jury proceedings would significantly further that goal. Such an extension would deter only police investigation consciously directed toward the discovery of evidence solely for use in a grand jury investigation. The incentive to disregard the requirement of the Fourth Amendment solely to-obtain an indictment from a grand jury is substantially negated by the inadmissibility of the illegally-seized evidence in a subsequent criminal prosecution of the search victim. For the most part, a prosecutor would be unlikely to request an indictment where a conviction could not be obtained. We therefore decline to embrace a view that would achieve a speculative and undoubtedly minimal advance in the deterrence of police misconduct at the expense of substantially impeding the role of the grand jury.”
From the foregoing excerpts from Calandra, it can be readily seen that the purpose of the exclusionary rule is to deter future unlawful official conduct and not as a bonus to the criminal defendant whose rights have been violated. Where-there has been no unlawful official misconduct, as in the present factual situation, the reason for the rule fails. Even if it be conceded that the reason for the exclusionary rule is to deter all illegal conduct, official or private, the application, of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served. Calandra,. supra. Thus, whether the exclusionary rule will be applied' in any given case comes down to a balancing test: whether the rule’s value as a deterrent to misconduct outweighs the' public interest in preventing and prosecuting crime.
As stated in the Note at 34 Montana Law Review 187, 195-196:
*513 “Logic indicates that certain requirements must be met if the rule is in fact going to fulfill its deterrent function. For one thing, the person committing the search and seizure must have an interest in obtaining a conviction with the information he secures. Obviously the rule is of no value where, for example, the police have ‘no interest in prosecuting, or are willing to forego successful prosecution in the interest of serving another goal.’ * * *
“The other requirement, which on the surface seems elemental, is that the person involved in the search and seizure must at least be aware of the rule. While it is not unusual to expect the police to be familiar with certain salient rules of evidence, it does seem unlikely that a layman with no interest or intent of securing the conviction of criminals would have much knowledge in this area.”
The testimony set forth at the beginning of the majority opinion shows that Hillis had two motives for removing the substance from defendant’s pocket, neither of which was to prosecute or convict defendant: (1) He wanted to remove the substance so that the other employees would not get the feeling that they could with impunity possess drugs on the McDonald’s premises; (2) he desired to keep the police from getting involved in order to protect the reputation of McDonald’s. Whether or not the desire to keep the police from getting involved was proper, Hillis was not motivated to secure a conviction of defendant. Neither is there any evidence of Hillis’ awareness of the exclusionary rule.
Even if it had been established that Hillis had been motivated to secure a conviction or had known of the exclusionary rule, the application of that rule in the case of a search and seizure by a private individual, as here, would not be appropriate. The function of the exclusionary rule is to deter, not to repair. Despite the motivation or knowledge of the exclusionary rule in the present case, the Court is bound to look at what effect an application in this case would have on future cases *514 of search and seizure by private individuals. We believe it would be a rare case where a private individual conducting an illegal seareh and seizure would have both the motivation to convict and an awareness of the exclusionary rule. Thus, the deterrent effect of imposing the exclusionary rule in this case would be. speculative at best. Such speculative value is here outweighed by the public interest in preventing and prosecuting crime. When the reason of a rule ceases, so should the rule itself. Section 49-102, R.C.M.1947.
It is difficult to determine just what the legal basis is for the majority opinion other than a love for the exclusionary rule. Heretofore I have attempted to show that Hillis was not in any manner an instrumentality of the police and in no sense was the proverbial “silver platter doctrine” involved here. Moreover, the majority opinion states that when Hillis reported to the police there was “abundant probable cause for arrest procedure”! Surely the majority does not mean that. Compare the holding on probable cause for an arrest here with that in State v. Thorsness, 165 Mont. 321, 528 P.2d 692, written by Justice Haswell and concurred in by Justice Daly.
' Thereafter the majority approves the statement in Stapleton v. Superior Court of L. A. County, 70 Cal.2d 97, 73 Cal.Rptr. 575, 447 P.2d 967, 970, that:
“Not only will evidence be excluded' if a private individual works at the direction or supervision of the police, but it will also be excluded when the police are guilty of no more than just 'idly standing by’.”
•In my view this is an unwise extension of the exclusionary rule.